[No. 8671. In Bank.—September 29, 1886.]

## CHARLES K. BREEZE ET AL., RESPONDENTS, *v.* JOHN BROOKS ET AL., APPELLANTS.

DEED — CONSIDERATION PAID BY STRANGER — RESULTING TRUST — FRAUDULENT CONVEYANCE — ESTOPPEL. — The land in controversy is part of a rancho, the legal title to which was, prior to 1865, held by the defendant Patrick Brooks and others as tenants in common. At that time Patrick Brooks was and since has been in the actual and exclusive possession of a portion of the rancho, and then held in fee an undivided

interest therein. At the same time he and one Fay were in possession of another portion of the rancho, being the land in controversy. On the 26th of August, 1865, Patrick purchased the interest of Fay, and there upon took the exclusive possession of the portion last mentioned. There-after, in the same year, Patrick delivered the possession thereof to hi: brother, John Brooks, and subsequently, on the 17th of October, 1865, purchased another undivided interest in the rancho, and caused the conveyance thereof to be made to John and recorded. On the 29th of May, 1868, a decree of partition was rendered in an action in which Patrick and John were parties, whereby the premises in controversy were set apart in severalty to John. On the 5th of January, 1875, John conveyed the legal title to the land to Patrick by a deed for which no new consideration was paid. From 1872 to 1875 John dealt with the plaintiffs, who were merchants, and became indebted to them for goods sold and delivered. During the time of such dealings, John resided on the land in controversy, and acted in relation thereto as the apparent owner, and stated to the plaintiffs that he was the owner. The plaintiffs, relying upon such statements, and without any knowledge that Patrick had or claimed any interest in the land, gave credit to John on the strength of his apparent ownership. During this time John was insolvent, and Patrick knew of his insolvency. The latter, however, never made any statement to the plaintiffs that John owned the land. The plaintiffs, having reduced their claim against John to judgment, brought the present action to set aside the deed of the 5th of January, 1875, on the ground that it was made in fraud of creditors. *Held,* that the deed was valid, as the legal title acquired by John under the deed of October 17, 1865, and the decree of partition was held in trust for Patrick, and that the latter was not estopped from asserting title to the premises.

APPEAL from a judgment of the Superior Court of San Mateo County, and from an order refusing a new trial.

The facts are stated in the opinion of Commissioner Foote.

*William M. Pierson, E. B. & J. W. Mastick,* and *W. C. Belcher,* for Appellants.

The consideration for the land having been paid by the defendant Patrick Brooks, the legal title acquired by John Brooks was held in trust for the former. (*Lessee of Smith* v. *McCann,* 24 How. 398; *Campfield* v. *Johnson,* 5 N. J. Eq. 245.) Patrick was not estopped by his conduct in asserting title to the land. (Bigelow on Estoppel, 503; Stephen's Digest of Evidence, 124; *Biddle Boggs* v. *Mer-*

*ced M. Co.*, 14 Cal. 297; *Davenport v. Turpin*, 43 Cal. 602; *Brant v. Virginia Coal Co.*, 93 U. S. 336; 2 Pomeroy's Eq. Jur., sec. 807; *Trenton Banking Co.* v. *Duncan*, 86 N. Y. 221.)

*Fox & Ross*, and *S. F. Leib*, for Respondents.

The defendant Patrick Brooks is estopped to assert his title. (*Cornish v. Abington*, 4 H. & W. 549; *Stevens v. Dennett*, 51 N. H. 330; 2 Pomeroy's Eq. Jur., sec. 805; *Anderson v. Anderson*, 69 Ill. 452.)

The COURT.—This cause was heard before Department Two of this court, and an opinion rendered January 27, 1886. A hearing by the court in Bank was granted, which has been had. For the reasons given in the opinion in Department, the judgment and order are reversed, and cause remanded for a new trial.

Ross, J., dissenting.—I dissent. The land in controversy is a part of the rancho Buri Buri, the legal title to which was, prior to the year 1865, held by divers persons as tenants in common. Among them was one Patrick Brooks, who then was and since has been in the actual and exclusive possession of a small portion of the rancho, and who then held in fee an undivided interest therein, sufficient to secure to him on partition the portion so possessed. At the same time, Patrick and one Fay (who was not one of the tenants in common) were together in possession of another and distinct portion of the rancho, such portion being the tract of land in controversy in the present suit. In that state of affairs, and on the 26th of August, 1865, Patrick acquired by purchase, and a deed of conveyance, the interest of Fay, and thereupon took the exclusive possession of the portion last mentioned. Thereafter, and in the same year, 1865, Patrick delivered possession of the last-mentioned tract to his brother John Brooks, and subsequently, to wit, October 17, 1865, purchased an undivided one hundred and twentieth

interest in said rancho, and caused the conveyance thereof to be made to John, and to be placed upon the records of the county. His purpose in so doing was to secure in severalty, on a partition of the rancho, each of said tracts,—the tract upon which he resided in his own name, and the other in the name of his brother John.

It is not important to inquire in this case into the *morale* of that proceeding. In point of fact, the ranch was partitioned in, and by a final decree of partition made and entered by, the Twelfth District Court on the twenty-ninth day of May, 1868, in an action brought for the purpose, and to which both Patrick and John were parties, by which decree the tract of land upon which Patrick resided was set apart to him in severalty, and the tract in controversy here in severalty to John Brooks.

From the year 1872 to the year 1875 John Brooks dealt with the plaintiffs to the present action, who were merchants, and during that time became indebted to them for goods sold and delivered in the sum of $707. The findings are to the effect that during the time of such dealings John Brooks resided upon the tract of land in question with his family, and cultivated the same, and exercised exclusive control thereof, and appeared and acted in relation thereto as the owner, and stated to the plaintiffs at the time he first asked for and received credit for them that he was the owner of said premises; that plaintiffs believed said statements, and relied upon them, and knew that he, John, was so in exclusive possession, exercising control thereof as owner, and was entirely ignorant of the fact that Patrick had or claimed to have an interest therein, and solely by reason of such statements, and apparent ownership and belief, gave John said credit; that as a matter of fact John Brooks then was, and ever since has been, insolvent, of which fact Patrick was at all times aware.

On the second day of January, 1875, John Brooks

executed to the plaintiffs his promissory note for the amount of his indebtedness to them, and three days afterwards, to wit, January 5, 1875, he executed to his brother Patrick a deed conveying to him the legal title to the land in dispute.  Subsequently the plaintiffs commenced suit upon the promissory note, recovered judgment thereon, upon which execution was issued, and under it all of the right, title, and interest of John Brooks in the land was sold by the sheriff to the plaintiffs, who in due time received a sheriff's deed therefor, and thereafter commenced the present action to compel the conveyance of the legal title to them.

Beyond question John Brooks never was the real owner of the land; but in cases of this sort the question .is not who was the actual owner, but whether the circumstances are such as that in equity and good conscience the apparent owner should be deemed and held to be the real owner for the protection of one who has innocently dealt with him as such.  The findings here show that Patrick knew that his brother John was insolvent, and knowing that fact, caused the legal title to the land to be conveyed to him and to be put upon the records of the county, put him in actual and exclusive possession, — in a word, clothed him with every *indicia* of absolute, legal, and equitable ownership, and permitted the matter so to remain for a period of more than six years.  He put it in the power of John to appear to the world as the true owner, and he had actual knowledge that John did assert himself to be the true owner in the partition suit, and that he was treated and recognized as such in and by the final decree in that action. Whether or not he had actual knowledge that John represented himself to the plaintiffs to be the real owner does not appear from the findings one way or the other; nor is it essential that it should under the facts of this case.  (2 Pomeroy's Eq. Jur., sec. 811, and authorities there cited.)  It does appear from the findings that John

did so represent himself, and that solely because of such representations plaintiffs extended to him the credit; and the records of the court as well as of the county sustained his pretensions. Having caused the title to the property to be conveyed to John, and to be so recorded in the public record of deeds, and having installed him in the actual and exclusive possession of the land, and having actual knowledge that John afterwards in the partition suit asserted himself to be its legal and equitable owner, and that the court so adjudged him, and having voluntarily caused these appearances and pretensions to be maintained for a long series of years, can it, with any show of reason or justice, be held that Patrick did not expect John to be recognized and dealt with by third parties as the true owner?

Under such circumstances was it not both natural and probable that he would be so treated and dealt with? Undoubtedly so. And if so, ought the party whose conduct occasions the confidence and loss to be heard to say that he who appeared to be the owner was in fact not such. Was there not such fault and negligence on the part of Patrick Brooks in concealing his own title as amounted to constructive fraud? I think there was. "The authorities establish the doctrine," said the Court of Appeals of New York in *Trenton Banking Company* v. *Duncan*, 86 N. Y. 230, "that the owner of land may, by an act *in pais*, preclude himself from asserting his legal title. But it is obvious that the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity. It is opposed to the letter of the statute of frauds, and it would greatly tend to the insecurity of titles if they were allowed to be affected by parol evidence of light and doubtful character. To authorize the finding of an estoppel *in pais*, against the legal owner of land, there must be shown, we think, either actual fraud, or fault or negligence equivalent to fraud on his part, in con-

cealing his title; or that he was silent when the circumstances would impel an honest man to speak; or such actual intervention on his part as in *Storrs* v. *Barker*, 6 Johns. Ch. 166, S. C., 10 Am. Dec. 316, as to render it just that as between him and the party acting upon his suggestions, he should bear the loss. Moreover, the party setting up the estoppel must be free from the imputation of laches in acting upon the belief of ownership by one who has no right." To the same effect is *Biddle Boggs* v. *Merced Mining Company*, 14 Cal. 367; *Stevens* v. *Dennett*, 51 N. H. 330; *Anderson* v. *Armstead*, 69 Ill. 454; 2 Pomeroy's Eq. Jur., secs. 805 et seq., and cases there cited.

I am therefore of opinion that to the extent of protecting the plaintiffs, John Brooks should be deemed and held to be the legal and equitable owner of the property in question at the time of the accruing of the indebtedness from him to the plaintiffs, and—the deed from John to Patrick Brooks being without consideration paid—at the time of the judgment, levy, and execution sale of the plaintiffs. It results that Patrick Brooks may be compelled to convey to plaintiffs the legal title to the premises. But this should only be done upon such terms and conditions as are just. The proper protection of the plaintiffs does not demand the absolute and unconditional conveyance of the legal title from Patrick Brooks to them. The justice of the case only requires that the land in question shall make good to them the amount of the aforesaid indebtedness with interest. Upon the return of the cause to the court below these amounts can be ascertained, and the decree so modified as to require the defendant, Patrick Brooks, to convey the legal title to the property to the plaintiffs unless he shall, within a stated time thereafter, pay to the plaintiffs the amount so ascertained by the court. For these reasons, I think the cause should be remanded with directions to the court below to modify the decree

so as to accord with the views here expressed, and as so modified that it should stand affirmed.

The following is the opinion of Department Two, above referred to:—

FOOTE, C.—The decree in this action adjudged that a certain deed made by John Brooks to his brother and co-defendant, Patrick Brooks, was fraudulent and void, and that Patrick took the legal title thereunder in trust for John and his successors in interest, and that he holds the same in trust for the plaintiffs, who were creditors of John, and purchasers at a sheriff's sale of the land conveyed, under a judgment where they were plaintiffs against John, and it commands the defendant Patrick to execute and deliver to plaintiffs a deed of conveyance to the land.

The lands involved are ninety-four and ninety-one hundredths acres, parcel of the Buri Buri or Sanchez rancho in San Mateo County, and are described in the complaint by metes and bounds. The complaint alleges:—

1. That on the 17th of October, 1865, the defendant, John Brooks, became the owner by purchase of one half of an undivided one sixtieth of the Buri Buri or Sanchez rancho in San Mateo County.

2. That under his purchase he took and thereafter held actual possession of the ninety-four and ninety-one hundredths acres, particularly described in the complaint, and which was parcel of the rancho.

3. That on the 29th of May, 1868, the rancho was partitioned among the owners by decree of the District Court of the twelfth judicial district for the county of San Mateo, and that the ninety-four and ninety-one hundredths acres occupied by the defendant John Brooks was by the decree set off to him in severalty, and that after the partition he continued to occupy it.

4. That on the second day of January, 1875, John Brooks was indebted to the plaintiffs, on settlement and adjustment of accounts, in the sum of $707.35, and gave them his note for that amount, payable one day after date, with interest at one and one half per cent per month.

5. That on the 5th of January, 1875, the defendant John Brooks executed and delivered to the defendant Patrick Brooks a deed conveying the ninety-four and ninety-one hundredths acres, which deed was recorded on the next day in the office of the county recorder.

6. That this deed was executed and delivered by John and received and recorded by Patrick without consideration, and for the "single object and purpose of hindering, delaying, and defrauding the plaintiffs" in the collection of their debt.

7. That on the 13th of June, 1877, the plaintiffs recovered a judgment against the defendant John Brooks, in the District Court of the fourth judicial district for the city of San Francisco for $948.85, for principal and interest on their note, and $19 costs, making in all $967.85.

8. That on the 22th of June, 1877, the sheriff of the county, under an execution issued upon that judgment, levied upon, and on the 6th of August sold to the plaintiffs all the right, title, and interest of John Brooks in this ninety-four and ninety-one hundredths acres of land, and no redemption being made, executed to them his deed on the 16th of May, 1878.

9. That the deed from John Brooks to Patrick Brooks was fraudulent and void, and that Patrick acquired no title under it.

10. That the plaintiffs are under their sheriff's deed the successors in interest of John Brooks, and are owners of all this title and interest in the land.

And they pray that the court may, by its decree, determine, — 1. That the deed from John to Patrick was made for the purpose of hindering, delaying, and defrauding

the creditors of John; and that Patrick did not acquire thereby any title or interest in the land, except in trust for John and his successors in interest; 2. That plaintiffs, under their sheriff's deed, acquired John's interest and the true title, and that Patrick be required to convey to them.

The defendants separately demurred to the complaint, on the ground of misjoinder of defendants, and that the complaint did not state facts sufficient to entitle the plaintiffs to the relief asked, or any relief against him. The demurrer was overruled, and the defendants having answered separately, the case was tried.

The courts finds: —

1. That the Buri Buri rancho was a Mexican grant, containing about eleven thousand acres, and that prior to 1865 it was owned by a considerable number of persons as tenants in common.

2. That prior to that year the defendant Patrick Brooks had acquired the possession of a small parcel of said rancho, upon which he was living at the time of the trial, and an undivided interest in the rancho sufficient to represent it.

3. That prior to 1865 the defendant Patrick and one Fay were in possession of another parcel of the ranch (the premises in controversy here), which was about two miles distant from the other parcel; and that on the 26th of August of that year, Fay, for the consideration of five hundred dollars, conveyed his interest to Patrick, who thereupon secured the exclusive possession.

4. That afterward, but in the same year, Patrick leased the premises in controversy to his brother, John Brooks, who continued to occupy the same as his tenant until the spring of 1878, holding from year to year under a parol lease.

5. That on October 17, 1865, Patrick, for the consideration of $3,660, bought another undivided interest in the rancho — an undivided one hundred and twentieth —

to represent this parcel, and had the deed made in the name of his brother John, to enable him to secure both parcels — that is, the one where he resided and the premises in controversy — on a partition of the rancho.

6. On May 26, 1868, under a decree of the District Court, the rancho was partitioned, and the premises in controversy were by the decree set off to John in severalty, on account of the one hundred and twentieth interest standing in his name, and the place on which he was living was set off to Patrick.

7. From 1872 to 1875 John bought goods from the plaintiffs, and was, on January 2, 1875, indebted for goods sold in the sum of $707, for which he gave them his promissory note.

8. During the time of his dealing with the plaintiffs, John was residing on the land in controversy, and represented to them that he was the owner of the land.

9. That John was, in fact, during all the time of his dealing with the plaintiffs, insolvent, and Patrick was aware of his financial condition.

10. On the 5th of January, 1875, John executed and delivered to Patrick, for the purpose of reinvesting him with the legal as well as the equitable title to the premises, a deed of conveyance, which was immediately put on record in the office of the county recorder.

11. The deed expressed a consideration of two thousand dollars, but no consideration was in fact paid.

12. On the thirteenth day of June, 1877, in a suit brought in the Fourth District Court, in and for the city and county of San Francisco, against John upon his note, the plaintiffs recovered a judgment for $948 damages and $19 costs.

13. Execution was issued upon that judgment, and on the 22d of June, 1877, was levied by the sheriff of San Mateo County upon John's interest in the land in controversy. On the 6th of August, 1877, the sheriff sold to the plaintiffs all John's right, title, and interest in the

property, and no redemption being made, on the 16th of May, 1878, made to them his deed, conveying to them all that right, title, and interest.

From these facts the court found, as conclusion of law, that plaintiffs were entitled to a decree in accordance with the prayer of their complaint, and by its decree adjudged that the deed from John to Patrick "was made without consideration, and was, and is hereby decreed to be, fraudulent, void, and of no effect; that the said Patrick Brooks thereby neither took, acquired, had, or has any right or title in or to the said described lands, or any part thereof, but thereunder took and held, and now holds, the legal title of said lands as trustee of and for the said John Brooks, and his legal successors in interest; that the plaintiffs Charles K. Breeze and Thomas Loughram have, by due and legal proceedings, process, sale, and conveyance, duly succeeded to, become, and now are, the legal successors of and holders of the interest, right, and title of the said John Brooks in and to all the said lands and premises, together with the appurtenances, and are now entitled to have the legal title thereof conveyed to them." And the decree thereupon commands the defendant Patrick to execute to the plaintiffs a deed, and directs that the clerk execute one for him in case he neglects for five days to make one.

Defendants moved for a new trial upon a statement of the case. The court denied their motion, and they appealed from the judgment and the order.

It is thus seen that the principal ground relied on to support the plaintiffs' contention was, that the deed of January 5, 1875, was void because made in fraud of the plaintiffs as creditors of John.

The decree ordered to be entered was in accordance with the prayer of the complaint, which was, as we have seen, that the deed be deemed to have been made "without consideration, and for the purpose of hindering, delaying, and defrauding the creditors of the said John

Brooks, and that the said deed and pretended convey-ance was and is fraudulent and void, and of no effect."

And the conclusions of law were, that the plaintiffs were entitled to a decree in accordance with such prayer.

From the findings, it plainly appears that John had nothing except a naked legal title. Patrick had paid all the money for the land, and John therefore held it in trust for him. John was his tenant, acknowledged him-self to Patrick as such, and never, so far as Patrick knew, asserted any title adverse to Patrick's, and Patrick's right to assert his claim thereto was not barred, and John only conveyed to Patrick that which belonged to him.

' The findings negative the idea that the plaintiffs, in giving credit to John, relied on any statement of Patrick that John owned the land; nor is it there intimated that they examined the records of deeds, or that of the parti-tion suit, to find out what they disclosed in reference to John's title, or relied on them in any way, to induce the credit which they extended to John. They seem to have relied on the facts that John lived on the land, claimed it in his conversations with them as his, and that he was insolvent, and Patrick knew it. And that is all which it is there claimed even tends to show Patrick as having been privy in any way to John's obtaining credit from the plaintiffs.

Therefore it does not appear that the deed from John to Patrick was made to hinder, delay, or defraud credi-tors; it was simply made to reinvest Patrick with the legal title to his own land. So that after this convey-ance was made in good faith, John had no interest in the land, and if it was sold at sheriff's sale under execu-tion, the purchaser got no title, as a purchaser at such sale can get no title save that of the judgment debtor: (Freeman on Executions, sec. 301; *Boggs* v. *Hargrave*, 16 Cal. 564; *McAlpine* v. *Tourtelotte*, 24 Fed. Rep. 69.) The findings, therefore, do not justify the decree that the deed was fraudulent and void, unless it appears that

Patrick, by his acts *in pais*, was estopped to set up what otherwise would have been the clear legal as well as equitable title, which he held under John's deed to him of the disputed premises.

So far as the findings disclose, Patrick did no act to induce creditors of John to believe the land was John's, save that he allowed the title upon the record to-stand in John's name, which record these creditors never examined.

Now, it does not appear that Patrick had any knowledge that John was getting credit from any one upon the faith of his apparent ownership of the land. There was, therefore, on the part of the former, no such carelessness or negligence as amounted to even the smallest degree of turpitude, and in such a case we understand the authorities all to agree that one cannot be estopped to set up that which, but for such act, would be a good legal title to land. It would be dangerous, in view of the statute of frauds, to further extend this rule of law in transferring by estoppel title to land. (Bigelow on Estoppel, 503; Fitzjames's Stephen's Digest of Evidence, 124; *Biddle Boggs* v. *Merced Mining Co.*, 14 Cal. 279; 2 Pomeroy's Eq. Jur., sec. 807; *Trenton Banking Co.* v. *Duncan*, 86 N. Y. 221.)

The material allegations of the complaint are not sustained by the findings, and the latter, so far from justifying the decree, warrant, we think, a reversal of the order denying a new trial, and a rendition here of a judgment in favor of the defendants, that the plaintiffs take nothing by their action, and pay the costs of this suit.

BELCHER, C. C., and SEARLS, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed, and cause remanded, with directions to render judgment for defendants on the findings.