[Civ. No. 23320. Second Dist., Div. One. Jan. 5, 1959.]

JEROME J. LALA et al., Appellants, v. JEROME S. MAIORANA et al., Defendants; STATE OF CALIFORNIA et al., Respondents.

Barry Sullivan for Appellants.

Edmund G. Brown, Attorney General, James E. Sabine, Assistant Attorney General, Dan Kaufmann and Jay L. Shavelson, Deputy Attorneys General, Pauline Nightingale, Conrad Lee Klein and Joseph Abahider for Respondents.

LILLIE, J.—Plaintiffs instituted this action to secure a judicial declaration that they were the owners, as joint tenants, of certain improved real property free and clear of all claims and liens asserted by the defendants. A disclaimer was filed by defendants, the Maioranas, to whom plaintiffs had conveyed the subject property, after their failure to plead to the complaint. Defendants State of California and Division of Labor Law Enforcement answered, admitting the transfer to the Maioranas and setting forth the amount and nature of their liens against the property as creditors of the Maioranas. An amended answer of the Division of Labor Law Enforcement raised the affirmative defense of laches and further alleged that the plaintiffs had come to court with unclean hands in that they had transferred title to the Maioranas in order to obtain illegal benefits from the federal government.

The trial court, sitting without a jury, rendered judgment in plaintiffs' favor, which judgment and its supporting findings of fact and conclusions of law were duly signed, filed and entered. Thereafter, defendants State of California and Division of Labor Law Enforcement moved the court for a new trial, reasserting the defense of illegality and requesting that the prior judgment be vacated pursuant to section 663, Code of Civil Procedure, as being "against the law." This motion was denied, but "pursuant to the provisions of section 662 of the Code of Civil Procedure" the trial court "modified" the judgment to the extent that plaintiffs' title was declared to be held subject to the liens recorded by the State and its agency. The modification was accomplished by an express provision in the court's order that one of the conclusions of law be changed to reflect the court's views and the corrected conclusion was set forth thereafter and followed by the recital "Let judgment be entered accordingly." No changes were made in the findings of fact. Plaintiffs have appealed from the judgment as modified.

Briefly recounting the evidence relative to the real property transaction in question, the pivotal portion of which by pretrial order was undisputed, it appears that in April of 1946 plaintiffs acquired title to the subject property and in November of the same year, without change in possession or payment of consideration, conveyed the premises to the Maioranas. The following month the Maioranas executed a trust deed in favor of a Santa Monica lending agency to secure a loan in the sum of $9,500. It further appears that plaintiffs were the real applicants for the loan which was obtained by

virtue of Mr. Maiorana's status as a former serviceman. The proceeds of the loan were then used to pay off existing encumbrances against the property, and all payments on the Santa Monica loan were made by plaintiffs, neither of whom had ever been in the armed forces.

The trial court signed findings of fact incorporating in detail what has heretofore been narrated. As a conclusion of law, however, it found that while the conveyance was "part of an illegal transaction" in violation of certain federal statutes, "no creditor nor any of the appearing defendants were defrauded by such illegal transfer" and hence the defense of illegality was unavailable. In its order denying a new trial and modifying the judgment, the trial court directed that the conclusion of law relating to the nonavailability of the defense of illegality be deleted and in lieu thereof there be inserted, as a new conclusion, that the premises were subject to the liens of the State and its agency and that the Maioranas had no interest in the subject property. As already pointed out, the order then related "Let judgment be entered accordingly," after which there was a direction that the judgment itself be modified to provide such changes. These changes, both in the conclusions of law and judgment, were effected by interlineation.

On appeal it is contended that the court erred (1) in changing its conclusions of law, (2) in changing its judgment, (3) in making the aforesaid changes by the procedural method followed and (4) in providing that the property be held subject to the liens recorded by the Maiorana creditors.

While respondents' motion for a new trial was based on section 663, Code of Civil Procedure, the court's order was made pursuant to the provisions of section 662. Having reference to new trials, section 662 reads as follows: "In ruling on such motion, in a cause tried without a jury, the court may, on such terms as may be just, change or add to the findings, modify the judgment, in whole or in part, and grant a new trial on all or part of the issues, or, in lieu of granting a new trial, may vacate and set aside the findings and judgment and reopen the case for further proceedings and the introduction of additional evidence with the same effect as if the case had been reopened after the submission thereof and before findings had been filed or judgment rendered. . . ." Appellants argue that the foregoing enactment "does not authorize the Court to change the conclusions of law, it may change the Findings of Fact, add to them, take from them,

or modify the judgment, that is all that is authorized by said section." Such a narrow or strict construction of the statute does not accord with the views of our reviewing courts which have consistently declined to limit the scope of the section, since it was amended in 1929 (*Moore* v. *Levy,* 128 Cal.App. 687, 696 [18 P.2d 362]). ■ Said the Supreme Court in *Spier* v. *Lang,* 4 Cal.2d 711, 714 [53 P.2d 138]: "The obvious purpose of the statute . . . was to give the court on denying the motion for a new trial the broad power to change its findings and to modify its judgment and thus avoid the necessity of a new trial. This was to subserve the ends of justice and to prevent unnecessary delays in cases where the court deemed itself mistaken as to its previous view of the evidence or in the application thereto of the law."

■ Although the section does not expressly provide for the correction of conclusions of law, we think the term "findings" is reasonably synonymous with "findings of fact and conclusions of law," particularly since the statute "presents an innovation in court procedure" (*Roraback* v. *Roraback,* 38 Cal.App.2d 592, 597 [101 P.2d 772]), otherwise the trial court would be deprived of the broad power to correct its mistaken application of the law to the findings. (*Spier* v. *Lang, supra.*) Too, the mere omission from section 662 of the words "conclusions of law" does not divest the court of authority to correct *both* the findings and conclusions of law. So it was declared in *Pacific Home* v. *County of Los Angeles,* 41 Cal.2d 855, at page 857 [264 P.2d 544]: "Upon denying the motion for a new trial, the court was authorized to vacate the prior findings, conclusions and judgment, and to make new findings and conclusions, and to render a new judgment [citing § 662, *Spier* v. *Lang, supra*]." To the same effect are *Gottbehuet* v. *Fox,* 130 Cal.App.2d 336, 340 [278 P.2d 925]; *Rutledge* v. *Rutledge,* 119 Cal.App.2d 112 [259 P.2d 78]; *Gardner* v. *Rich Mfg. Co.,* 68 Cal.App.2d 725 [158 P.2d 23]. ■ In the case at bar the trial court declined to change its findings of fact but considered itself mistaken as to the application of the law to such findings. Even should the previously stated implication from *Spier* v. *Lang, supra,* be unwarranted, it must be borne in mind that "(T)he line of demarcation between what are questions of fact and conclusions of law is not one easy to be drawn in all cases" (*Levins* v. *Rovegno,* 71 Cal. 273, 275 [12 P. 161]). Here, the trial court's conclusion as to the existence of respondents' liens upon the property was in effect a finding of the property's indebtedness for and in

the amount of such liens. ■ A finding of indebtedness is not a conclusion of law but the statement of an ultimate fact. (*Nisbet* v. *Rhinehart*, 2 Cal.2d 477, 482 [42 P.2d 71]), and it makes no difference that the finding is denominated as a conclusion of law (*People* v. *One 1949 Cadillac*, 126 Cal. App.2d 410, 412 [272 P.2d 873]; *Kramer* v. *Watnick*, 63 Cal. App.2d 308, 310 [146 P.2d 947]). To the same effect is *Gossman* v. *Gossman*, 52 Cal.App.2d 184, 191-193 [126 P.2d 178].

■ Appellants' contention is without merit for the further reason that the sole issue is one of law involving the legal effect of the finding that the transaction in question was tainted with illegality; as will hereinafter be pointed out, a second trial of the cause would necessarily have resulted in a judgment similar to that from which this appeal is taken, and hence no miscarriage of justice resulted (Const., art. VI, § 4½; *Bureau of Welfare etc. Assn.* v. *Drapeau*, 21 Cal.App.2d 138, 151 [68 P.2d 998]).

■ Appellants' second contention relates to the trial court's claimed lack of authority to correct its judgment and enter a different judgment as modified. Contrary to appellants' assertion that the term "modification" denotes "some minor change in substance," section 662 expressly authorizes the court to "modify the judgment *in whole* or in part." (Emphasis added.) The same contention was decided adversely to appellants in *Clarke* v. *Fiedler*, 44 Cal.App.2d 838, 847 [113 P.2d 275], where this court said: "Appellants' contention that the trial court was without power to alter its findings and completely to reverse its prior judgment cannot be sustained. Under the broad power conferred upon the court in this regard by section 662 of the Code of Civil Procedure, the trial court was empowered, in ruling upon the motion for a new trial, if it deemed itself mistaken as to its previous view of the evidence or in the application thereto of the law, to set aside the previous findings and the judgment predicated thereon." A similar situation was presented in *Wyman* v. *Monolith Portland C. Co.*, 3 Cal.App.2d 540, 545 [39 P.2d 510], where the trial court ordered judgment in favor of the defendant company and upon the denial of plaintiff's motion for a new trial rendered judgment for the plaintiff. Affirming the new and different judgment the reviewing court said: "The very purpose of the section is to permit a court to correct its own errors without incurring the delay and expense incident to a new trial or appeal." The same con-

struction of the statute is found in *Estate of Perkins*, 21 Cal.2d 561 [134 P.2d 231], and *Estate of Busteed*, 105 Cal. App.2d 14, 17 [232 P.2d 881]. We do not believe appellants' contention to be tenable.

It is next urged by appellants that the procedural method followed by the trial court in modifying its judgment was without sanction of law. They argue in effect that new findings of fact and conclusions of law should have been signed and filed, and that it was error to accomplish the change in question by interlineation. The order denying a new trial was signed, filed and entered; it expressly specified in what respects the conclusion of law, theretofore filed, was corrected, and then recited "Let judgment be entered accordingly." Thereupon the order expressly set forth the respects in which the judgment, also theretofore filed, was modified. The changes in the conclusion of law and judgment were then made by interlineation. Since section 662 authorizes a modification of the judgment "on such terms as may be just," neither procedural error nor abuse of discretion is manifest in the record before us. Furthermore, there is no merit to the implied suggestion that the order denying a new trial was lacking in formal sufficiency because it required reference to the original findings. As stated in *Bourke* v. *Frisk*, 92 Cal.App.2d 23, 32 [206 P.2d 407]: "Findings need not 'be in any particular form' . . . Findings are sufficient . . . 'if they can be made certain either by reference to the pleadings or to the record. . . .'" This principle is particularly applicable to proceedings under section 662, Code of Civil Procedure, the provisions of which "are to be liberally construed to achieve the purposes it was designated to accomplish" (*Roraback* v. *Roraback*, 38 Cal.App.2d 592, 597 [101 P.2d 772]). Appellants rely on *Easterly* v. *Cook*, 140 Cal.App. 115, 123-124 [35 P.2d 164], and *Supple* v. *Luckenbach*, 12 Cal.2d 319, 322 [84 P.2d 52], in both of which cases the first of two judgments rendered and based upon unsigned findings was held to be a nullity. Here, as already pointed out, both the original findings and judgment, as well as the order of modification, were duly signed, filed and entered. It is clear therefore neither of appellants' cases is in point.

Appellants' final argument challenges that portion of the modified judgment which decreed that appellants' title be held subject to respondents' liens as creditors of the Maioranas. Since the modified judgment confirmed the court's

original finding that the Maioranas at all times in question held the premises "for the benefit of and in trust for the plaintiffs," appellants argue that "trust property may not be taken to pay (the) personal debts of (the) trustee." They admit that their transaction with the Maioranas violated certain federal statutes and was consequently illegal; nevertheless they contend that (1) any defense of illegality was available only to the United States, (2) the evidence was insufficient to establish any intent by appellants to defraud respondents, (3) the transaction being governed by federal statutes, "(T)he State of California could not adjudge the rights of the United States and the lender," and (4) under the pertinent federal legislation the contract in question is voidable at most, and not void. We conclude that each and every one of the foregoing points is without merit.

The loan of $9,500 from the Santa Monica source was sought and secured under the provisions of the Servicemen's Readjustment Act (38 U.S.C.A., § 694a). Discussing that legislation, the court in *Diamond* v. *Willett* (La.App.), 37 So.2d 338, 341, said: "The acts of Congress herein referred to are designed to give relief to members of the armed forces, of limited means, who honorably served their country during World War II." Hence it is provided in the statute (38 U.S.C.A. § 694a, *supra*) that the proceeds of the government-guaranteed loan thereunder be used for the payment of property purchased or improved under terms which bear a proper relation to the veteran's present and anticipated income and expenses. The intent to benefit and protect veterans, and veterans only, is plain throughout the statute; accordingly, no more strained construction of the legislation could be conceived than to allow a nonveteran, such as each of these appellants, to circumvent the act and secure its benefits by using, as admittedly they did, a true veteran such as Maiorana as a mere "straw." Other circumventions of the statute, no less censurable, have been properly denounced by our courts as violative of public policy, entirely void and wholly unenforceable (*Young* v. *Hampton*, 36 Cal.2d 799, 805-806 [228 P.2d 1, 19 A.L.R.2d 830]; *Sattler* v. *Van Natta*, 120 Cal.App. 2d 349, 352 [260 P.2d 982]). To the same effect is *Schalow* v. *Schalow*, 163 Cal.App.2d 448, 450-452 [329 P.2d 592], which involved the purchase of a home pursuant to Military and Veterans Code, section 985 et seq.

Appellants' premise that they did not intend to cheat or defraud respondent State and respondent state agency is

utterly fallacious and beside the point. As forcefully stated in *Lee On* v. *Long*, 37 Cal.2d 499, 502 [234 P.2d 9] : "No principle of law is better settled than that a party to an illegal transaction cannot come into a court of law . . . and set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim (citation). *Nor is this established rule limited in its application to parties to the illegal transaction as distinguished from an attempt to set up a claim against a third party based on the law's violation"* (emphasis added). The converse, of course, must necessarily be true when, as here, appellants seek to defend against the affirmative allegation of illegality contained in respondents' pleadings. "Whatever the state of the pleadings, when the evidence shows that the plaintiff in substance seeks to enforce an illegal contract . . . the court has both the power and the duty to ascertain the facts in order that it may not unwittingly lend its assistance to the consummation or encouragement of what public policy forbids" (*Lewis & Queen* v. *N. M. Ball Sons*, 48 Cal.2d 141, 147-148 [308 P.2d 713]). Nor is it of any moment that appellants were not indebted to respondents and that the latter will thus benefit to the extent of their liens. The claimed injustice to appellants is "outweighed by the importance of deterring illegal conduct" (*Lewis & Queen* v. *N. M. Ball Sons, supra,* 150).

Since a violation of the pertinent legislation is a criminal offense (*Young* v. *United States,* 178 F.2d 78), since appellants aided and abetted the violation and are equally responsible (*Russell* v. *United States,* 222 F.2d 197) and since our courts have consistently refused to sanction judicial enforcement of claims arising from such an unlawful transaction (*Young* v. *Hampton, supra*; *Cole* v. *Ames,* 155 Cal.App.2d 8, 12-13 [317 P.2d 662]), it follows that appellants may not validly rely upon their "trust" theory to escape the consequences of their acts. Cases cited by appellants (*Miller* v. *Miller,* 55 Cal.App.2d 199, 205 [130 P.2d 438] ; *Murphy* v. *Clayton,* 113 Cal. 153, 161 [45 P. 267], and *Breeze* v. *Brooks,* 71 Cal. 169 [9 P. 670, 11 P. 885]) all proceed upon the proposition that the beneficiary of the trust has not acted unlawfully. A far different situation is presented when legal title is vested in another for improper purposes. Thus, in *Withrow* v. *National Surety Co.,* 122 Cal.App. 242 [10 P.2d 83], plaintiff's conveyance was held to have been conceived in fraud and no enforceable trust arose. "A conveyance in fraud of creditors vests title to the property transferred in the

grantee, except as against the creditors of the grantor. While the grantee holds such title the property is subject to the claims of his creditors to the same extent as any other property to which he has title. Neither the fraudulent grantor nor grantee can set up the fraudulent character of the conveyance as against the creditors of the grantee.'' (P. 247.) The foregoing principle is followed in *Ramirez* v. *Hartford Acc. & Indem. Co.*, 29 Cal.App.2d 193, 197 [84 P.2d 172].

 Finally, the trial court's general finding that the Maioranas held the subject property ''for the benefit of and in trust for plaintiffs'' does not render the findings uncertain and inconsistent as to respondents' liens. More specific and detailed findings were made with respect to the nature of the constructive trust mentioned in the above general finding, particularly its unlawful origin. In such an instance, the specific finding prevails (*Lobb* v. *Brown*, 208 Cal. 476, 481 [281 P. 1010]). Furthermore, it is settled that findings must be construed to support the judgment by the reconciliation of seeming ambiguities and uncertainties (*Richter* v. *Walker*, 36 Cal.2d 634, 639 [226 P.2d 593]). No reversible error is manifest.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.