[No. E037079. Fourth Dist., Div. Two. Jan. 26, 2006.]

CITY OF RANCHO CUCAMONGA, Plaintiff and Appellant, v.
REGIONAL WATER QUALITY CONTROL BOARD-SANTA ANA
REGION et al., Defendants and Respondents;
COUNTY OF SAN BERNARDINO et al., Real Parties in Interest and
Respondents.

1378

COUNSEL

James L. Markman; Richards, Watson & Gershon, John J. Harris and Evan J. McGinley for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Mary E. Hackenbracht, Assistant Attorney General, Richard Magasin and Jennifer F. Novak, Deputy Attorneys General, for Defendants and Respondents.

OPINION

GAUT, J.—

## 1. Introduction

This case involves environmental regulation of municipal storm sewers that carry excess water runoff to the Santa Ana River as it passes through San Bernardino County on its way to the Pacific Ocean. Federal and state laws impose regulatory controls on storm sewer discharges. Municipalities are required to obtain and comply with a federal regulatory permit limiting the quantity and quality of water runoff that can be discharged from these storm sewer systems.

In this instance, the Regional Water Quality Control Board for the Santa Ana Region (the Regional Board) conducted public hearings and then issued a comprehensive 66-page municipal storm sewer permit governing 18 local

public entities. Two permittees, the City of Rancho Cucamonga and the City of Upland, among others, filed an administrative appeal with the State Water Resources Control Board (the State Board.) The State Board summarily dismissed the appeal. The Cities of Rancho Cucamonga and Upland[1] then filed a petition for writ of mandate and complaint against the State Board and the Regional Board.

The trial court sustained without leave to amend the demurrer of the State Board to the entire action. It sustained the demurrer as to four causes of action and granted the motion to strike of the Regional Board. After a hearing, the trial court denied the petition for writ of mandate.

Both procedurally and substantively, the City of Rancho Cucamonga challenges the conditions imposed by the NPDES[2] permit and waste discharge requirements (the 2002 permit). It contends the procedure by which the 2002 permit was adopted was not legal, that the 2002 permit's conditions are not appropriate for the area, and that the permit's requirements are too expensive. Because we conclude the permit was properly adopted and its conditions and requirements are appropriate, we reject these contentions.

### 2. The National Pollutant Discharge Elimination System

California cases have repeatedly explained the complicated web of federal and state laws and regulations concerning water pollution, especially storm sewer discharge into the public waterways. (*City of Burbank v. State Water Resources Control Bd.* (2005) 35 Cal.4th 613, 619–621 [26 Cal.Rptr.3d 304, 108 P.3d 862] (*Burbank*); *Building Industry Assn. of San Diego County v. State Water Resources Control Board* (2004) 124 Cal.App.4th 866, 872–875 [22 Cal.Rptr.3d 128] (*Building Industry*); *Communities for a Better Environment v. State Water Resources Control Bd.* (2003) 109 Cal.App.4th 1089, 1092–1094 [1 Cal.Rptr.3d 76] (*Communities*); *WaterKeepers Northern California v. State Water Resources Control Bd.* (2002) 102 Cal.App.4th 1448, 1451–1453 [126 Cal.Rptr.2d 389]).

For purposes of this case, the important point is described by the California Supreme Court in *Burbank*: "Part of the Federal Clean Water Act [33 U.S.C. § 1251 et seq.] is the National Pollutant Discharge Elimination System (NPDES), '[t]he primary means' for enforcing effluent limitations and standards under the Clean Water Act. (*Arkansas v. Oklahoma* [(1992) 503 U.S.

---

[1] Upland is not a party to this appeal.
[2] The National Pollutant Discharge Elimination System.

91, 101 [117 L.Ed.2d 239, 112 S.Ct. 1046]].) The NPDES sets out the conditions under which the federal [Environmental Protection Agency] or a state with an approved water quality control program can issue permits for the discharge of pollutants in wastewater. (33 U.S.C. § 1342(a) & (b).) In California, wastewater discharge requirements established by the regional boards are the equivalent of the NPDES permits required by federal law. (§ 13374.)" (*Burbank, supra,* 35 Cal.4th at p. 621.)

California's Porter-Cologne Act (Wat. Code, § 13000 et seq.) establishes a statewide program for water quality control. Nine regional boards, overseen by the State Board, administer the program in their respective regions. (Wat. Code, §§ 13140, 13200 et seq., 13240, and 13301.) Water Code sections 13374 and 13377 authorize the Regional Board to issue federal NPDES permits for five-year periods. (33 U.S.C. § 1342, subd.(b)(1)(B).)

As discussed more fully in part 6 *post,* the state-issued NPDES permits are subject to the informal hearing procedures set forth for administrative adjudications. (Gov. Code, § 11445.10 et seq.; Cal. Code Regs., tit. 23, § 647 et seq.) The issuance of permits is specifically excluded from the procedures for administrative regulations and rulemaking. (Gov. Code, §§ 11340 et seq., 11352.)

### 3. Factual and Procedural Background

The Regional Board issued the first NPDES permit for San Bernardino County in 1990. The principal permittee was the San Bernardino Flood Control District (the District). The 1990 permit required the permittees to develop and implement pollution control measures, using "best management practices" and monitoring programs, to eliminate illegal discharges and connections, and to obtain any necessary legal authority to do so. The management programs could be existing or new.

In 1993, the District developed the NPDES drain area management program (DAMP).

The second NPDES permit was issued in 1996 and was based on the report of waste discharge (ROWD) prepared by the principal permittee and copermittees, including Rancho Cucamonga. The 1996 permit proposed extending the existing program, which included inspections of industrial and commercial sources; policies for development and redevelopment; better public education; and implementation of a monitoring program. It offered a commitment to reduce pollutants to the "maximum extent practicable."

In 2000, the permittees submitted another ROWD to renew their NPDES permit. The 2000 ROWD proposed continuing to implement and develop water quality management and monitoring programs.

Based on the 2000 ROWD, the Regional Board staff created five successive drafts of the 2002 permit, incorporating written comments by Rancho Cucamonga and others and comments made during two public workshops. Some of the comments addressed the economic considerations of anticipated prohibitive compliance costs.

The notice of the public hearing to consider adoption of the 2002 permit hearing announced: "relevant Regional Board files are incorporated into the record;" the governing procedures were those for an informal hearing procedure as set forth in "Title 23, California Code of Regulations, Section 647 et seq.;" and "Hearings before the Regional Water Board are not conducted pursuant to Government Code section 11500 et seq.," the alternative formal hearing procedure for administrative adjudication. The notice was mailed to all permittees. The accompanying "fact sheet," which was publicly circulated, offered further information about the conduct and nature of the hearing and the legal and factual grounds for the Regional Board's recommendation to adopt the 2002 permit.

The informal public hearing was conducted on April 26, 2002. Neither Rancho Cucamonga nor any of the permittees objected to the form or substance of the hearing. Ultimately, after a staff presentation and testimony, including a statement from Rancho Cucamonga's counsel, the Regional Board adopted the 2002 permit. After the State Board dismissed their administrative appeal, Rancho Cucamonga and Upland filed the instant action.

The operative pleading is the second amended petition for writ of mandate and complaint. The petition alleges that the State Board and the Regional Board acted illegally and in excess of their jurisdiction in developing, adopting and implementing the 2002 permit. Based on 26 pages of general allegations, the petition asserts eight causes of action, alleging the State Board and the Regional Board violated sections 13241, 13263, and 13360 of the Water Code (the Porter-Cologne Act); the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.); the California Administrative Procedure Act (Gov. Code, §§ 11340–11529); the California Constitution; and the federal Clean Water Act; and seeking declaratory and injunctive relief.

The State Board successfully opposed the action on demurrer. The Regional Board eliminated four causes of action, the fourth, fifth, seventh, and eighth by demurrer and motion to strike. On the remaining four causes of action, the trial court found in favor of the Regional Board.

#### 4. State Board's Demurrer

Rancho Cucamonga maintains the trial court should not have sustained the demurrer of the State Board without leave to amend because the State Board is the ultimate authority on state-issued NPDES permits, and, therefore, was properly joined as a party: "Because the State Board has for all intents and purposes adopted the rules and policies of general application upon which the Permit is based, it is clearly a proper party to this action."

The difficulty with Rancho Cucamonga's theory of liability against the State Board is, to quote Gertrude Stein about the City of Oakland, "There is no there there." (Stein, Everybody's Autobiography (1937).) In other words, Rancho Cucamonga's allegations against the State Board lack any substance. Instead, Rancho Cucamonga launches an unspecific attack on the State Board without identifying any particular problems. The petition makes the unexceptional allegation that the State Board formulates general water control policy which it implements and enforces through regional boards. It also alleges the State Board has not complied with the Administrative Procedure Act but it does not identify any objectionable policies or how there is no compliance. Instead the petition complains about a State Board letter directing that all NPDES permits follow consistent principles regarding standard urban storm water mitigation plans. Additionally, the petition maintains the 2002 permit included new reporting requirements and increased costs of compliance.

But the foregoing allegations did not articulate any improper State Board conduct. The 2002 permit, issued by the Regional Board and not by the State Board, is not subject to formal rulemaking procedures. (Gov. Code, § 11352, subd. (b).) The State Board's letter, explaining a precedential decision concerning mitigation plans, is not an example of formal rulemaking. (Gov. Code, § 11425.60, subd. (b).) By dismissing Rancho Cucamonga's administrative appeal concerning the 2002 permit, the State Board declined to become involved and the Regional Board's decision to issue the permit became final and subject to judicial review. (*People ex rel Cal. Regional Wat. Quality Control Bd. v. Barry* (1987) 194 Cal.App.3d 158, 177 [239 Cal.Rptr. 349].) But the State Board was not made a proper party by reason of its dismissal of the administrative appeal.

Furthermore, even if Rancho Cucamonga had identified any cognizable claim against the State Board, it would have been barred by the 30-day statute of limitations for challenging an improperly adopted State Board regulation or order. (Wat. Code, § 13330; Gov. Code, § 11350.)

We hold the trial court properly sustained without leave to amend the State Board's demurrer to the second amended petition for writ of mandate and complaint.

### 5. Standard of Review for Petition for Writ of Mandate

In deciding a petition for writ of mandate, the trial court exercises its independent judgment. (Code Civ. Proc., § 1094.5, subd. (c); Wat. Code, § 13330, subd. (d); *Building Industry, supra*, 124 Cal.App.4th at p. 879.) But, "[i]n exercising its independent judgment, a trial court must afford a strong presumption of correctness concerning the administrative findings . . . . [¶] . . . [¶] . . . Because the trial court ultimately must exercise its own independent judgment, that court is free to substitute its own findings after first giving due respect to the agency's findings." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817–818 [85 Cal.Rptr.2d 696, 977 P.2d 693] (*Fukuda*).)

On appeal, the reviewing court determines whether substantial evidence supports the trial court's factual determinations. (*Fukuda, supra*, 20 Cal.4th at p. 824; *Building Industry, supra*, 124 Cal.App.4th at p. 879.) The trial court's legal determinations receive a de novo review with consideration being given to the agency's interpretations of its own statutes and regulations. (*Building Industry, supra*, at p. 879; *Nasha v. City of Los Angeles* (2004) 125 Cal.App.4th 470, 482 [22 Cal.Rptr.3d 772].)

### 6. Rancho Cucamonga's Objections to the Administrative Record and Lack of Notice

The notice of the administrative hearing for adoption of the 2002 permit included the statement that the Regional Board's files would be incorporated as part of the record. Before trial on the writ petition, Rancho Cucamonga attempted to raise an omnibus objection to the entire administrative record and a specific objection to four documents, three studies about marine pollution and one economic study. The trial court ruled the objections had been waived by not making them before or at the time of the hearing. Applying the presumption of administrative regularity, we affirm the trial court's evidentiary ruling. (*Mason v. Office of Admin. Hearings* (2001) 89 Cal.App.4th 1119, 1131 [108 Cal.Rptr.2d 102].)

The reasons given by Rancho Cucamonga as to why the trial court should have sustained its objections to all or part of the administrative record are that it did not waive its objections to the record because Rancho Cucamonga did not know the hearing was adjudicative; the Regional Board did not provide

notice of an informal hearing (Gov. Code, § 11445.30); and Rancho Cucamonga never had an opportunity to object to the administrative record.

■ As noted previously, Government Code section 11352, subdivision (b), makes the issuance of an NPDES permit exempt from the rulemaking procedures of the Administrative Procedure Act. Permit issuance is a quasi-judicial, not a quasi-legislative, rulemaking proceeding: "The exercise of discretion to grant or deny a license, permit or other type of application is a quasi-judicial function." (*Sommerfield v. Helmick* (1997) 57 Cal.App.4th 315, 320 [67 Cal.Rptr.2d 51]; see *City of Santee v. Superior Court* (1991) 228 Cal.App.3d 713, 718 [279 Cal.Rptr. 22].)

Instead, the Regional Board correctly followed the administrative adjudication procedures (Gov. Code, § 11445.10 et seq.) and the companion regulations at California Code of Regulations, title 23, sections 647–648.8 for informal adjudicative public hearings. These procedures were announced in the notice of hearing which also stated that Government Code section 11500 et seq., governing formal administrative adjudication hearings, would not apply, thus satisfying Government Code section 11445.30 requiring notice of an informal hearing procedure. At the time of the hearing, Rancho Cucamonga did not object to the informal procedure. Rancho Cucamonga's effort to argue that federal notice requirements (40 C.F.R. § 124.8, subd. (b)(6)(ii) (2005)) should also have been followed fails because this involved a state-issued NPDES permit adopted according to California procedures.

Because Rancho Cucamonga was given notice that the hearing on the permit would proceed as an informal administrative adjudication, it cannot successfully argue it was relieved of the obligation to object to the administrative record at the time of the hearing. An informal administrative adjudication contemplates liberality in the introduction of evidence. (Cal. Code Regs., tit. 23, §§ 648, subd. (d), 648.5.1.) If Rancho Cucamonga wished to object to the informal hearing procedures, including the liberal introduction of evidence, it should have raised its objections as provided by statute and regulation before or at the time of the hearing (Gov. Code, §§ 11445.30, 11445.40, 11445.50; Cal. Code Regs., tit. 23, § 648.7), not a year later in the subsequent civil proceeding.

### 7. Economic Considerations for Issuance of NPDES Permit

Rancho Cucamonga's next assignment of error is that the Regional Board failed to consider the economic impact of the requirements of the 2002 permit by not conducting a cost-benefit analysis. Rancho Cucamonga relies on the California Supreme Court's *Burbank* opinion, in which the court held: "When . . . a regional board is considering whether to make the pollutant restrictions in a wastewater discharge permit *more stringent* than federal law

requires, California law allows the board to take into account economic factors, including the wastewater discharger's cost of compliance." (*Burbank, supra,* 35 Cal.4th at p. 618.) Rancho Cucamonga contends that the 2002 permit exceeds federal requirements and that, therefore, this case should be remanded for a consideration of economic factors. (See *ibid.;* Wat. Code, § 13241, subd. (d).)

The two problems with this argument are the trial court found there was no evidence that the 2002 permit exceeded federal requirements and Rancho Cucamonga does not explain now how it does so. There was also evidence that the 2002 permit was based on a fiscal analysis and a cost-benefit analysis. In the absence of the foundational predicate and in view of evidence that cost was considered, Rancho Cucamonga's contention on this point fails.

 We also reject Rancho Cucamonga's related procedural argument that the Regional Board's motion to strike was impermissible as piecemeal adjudication. (*Regan Roofing v. Superior Court* (1994) 24 Cal.App.4th 425, 432–436; *Lilienthal & Fowler v. Superior Court* (1993) 12 Cal.App.4th 1848, 1851–1855 [16 Cal.Rptr.2d 458].) It is well recognized a court may strike all or part of a pleading as it did in this instance. (Code Civ. Proc., §§ 431.10, 436; *PH II, Inc. v. Superior Court* (1995) 33 Cal.App.4th 1680, 1682–1683 [40 Cal.Rptr.2d 169].)

### 8. Substantial Evidence

Rancho Cucamonga also challenges the trial court's independent factual determination that sufficient evidence supports the findings of the Regional Board. Rancho Cucamonga's main contention is that the 2002 permit was not distinctively crafted for San Bernardino County but, instead, copied a similar permit for other counties without identifying any particular water quality impairment in San Bernardino County caused by the permittees. In other words, no evidence in the record supports issuance of the 2002 permit and the trial court did not identify any such evidence in its statement of decision.

 One problem with Rancho Cucamonga's foregoing argument is that the Clean Water Act requires an NPDES permit to be issued for *any* storm sewer discharge, whether there is any actual impairment in a particular region. (33 U.S.C. § 1342; *Communities, supra,* 109 Cal.App.4th at pp. 1092–1093.) Therefore, Rancho Cucamonga's contention that the permit fails to identify impaired water bodies in the region is beside the point.

In its statement of decision, the trial court discussed the inadequacy of the arguments and evidence cited by Rancho Cucamonga and concluded: "The San Bernardino Permit is based in part on the Basin Plan for this region. It is

also based on the permittees' own reports and monitoring within this region . . . . It incorporates the permittees' management program, which is unique to these cities and county." The trial court included a citation to the 1993 DAMP report's "Geographic Description of the Drainage Area," which discusses the specific conditions present in San Bernardino County.

On appeal, Rancho Cucamonga faults the trial court for not presenting a more detailed description of the evidence supporting the issuance of the permit. We do not think the trial court, or this court, must bear that burden.

■ First, "[a]n agency may . . . rely upon the opinion of its staff in reaching decisions, and the opinion of staff has been recognized as constituting substantial evidence. (*Coastal Southwest Dev. Corp. v. California Coastal Zone Conservation Com.* (1976) 55 Cal.App.3d 525, 535–536 [127 Cal.Rptr. 775].)" (*Browning-Ferris Industries v. City Council* (1986) 181 Cal.App.3d 852, 866 [226 Cal.Rptr. 575].) Here the Regional Board adopted the recommendation of its staff in issuing the permit. And, as the record shows, the staff's recommendation was based on the previous 1990 and 1996 permits, the 1993 DAMP report and the 2000 ROWD, the permittees' application for renewal of the 1996 permit, as well as more general water quality factors. The evidence contradicts Rancho Cucamonga's assertion, that "the Regional Board simply copied verbatim the NPDES Permit for North Orange County, a coastal region with markedly different water quality conditions and problems."

As part of the trial court's consideration of the petition for writ of mandate, Rancho Cucamonga and the Regional Board directed the court to review specific items of evidence contained in the administrative record. In its opposing brief, the Regional Board offered a detailed account of the evidence supporting the issuance of the permit. The trial court indicated it had reviewed the parties' submissions before ruling. It discussed the evidence at the hearing on the petition and referred to it in its statement of decision. (*Lala v. Maiorana* (1959) 166 Cal.App.2d 724, 731 [333 P.2d 862].) Rancho Cucamonga had the burden of showing the Board abused its discretion or its findings were not supported by the facts. (*Building Industry, supra,* 124 Cal.App.4th at pp. 887–888.) To the extent it attempted to do so at the trial court level, it was not successful.

This court has independently reviewed the record with particular attention to the evidence as emphasized by the parties. We do not, however, find it incumbent upon us or the trial court to review the many thousands of pages submitted on appeal and identify the particular evidence that constitutes substantial evidence. Instead, we deem the trial court's findings sufficient and not affording any grounds for reversal. (*Building Industry, supra,* 124 Cal.App.4th at p. 888; see *Weisz Trucking Co., Inc. v. Emil R. Wohl*

*Construction* (1970) 13 Cal.App.3d 256, 264 [91 Cal.Rptr. 489], citing *Perry v. Jacobsen* (1960) 184 Cal.App.2d 43, 50 [7 Cal.Rptr. 177].)

### 9. Safe Harbor Provision

As it did repeatedly below, Rancho Cucamonga maintains the 2002 permit violates section 402(k) of the Clean Water Act (33 U.S.C. § 1342(k)), because the permit does not include "safe harbor" language, providing that, if a permittee is in full compliance with the terms and conditions of its permit, it cannot be found in violation of the Clean Water Act. (*U.S. Public Interest v. Atlantic Salmon* (1st Cir. 2003) 339 F.3d 23, 26; *EPA v. State Water Resources Control Board* (1976) 426 U.S. 200, 205 [48 L.Ed.2d 578, 96 S.Ct. 2022].) The trial court found there was no statutory right to a "safe harbor" provision to be included as the term of the permit. We agree.

This seems like much ado about nothing because 33 United States Code section 1342(k), already affords Rancho Cucamonga the protection it seeks: "Compliance with a permit issued pursuant to this section shall be deemed compliance, for purposes of sections 1319 and 1365 of this title, with sections 1311, 1312, 1316, 1317, and 1343 of this title, except any standard imposed under section 1317 of this title for a toxic pollutant injurious to human health." Rancho Cucamonga does not cite any persuasive authority as to why this statutory protection had to be duplicated as a provision in the 2002 permit.

Furthermore, the 2002 permit complied with the State Board's water quality order No. 99-05, a precedential decision requiring NPDES permits to omit "safe harbor" language used in earlier permits. A permit without "safe harbor" language was upheld in *Building Industry, supra*, 124 Cal.App.4th at page 877. The trial court did not err.

### 10. Maximum Extent Practicable

Rancho Cucamonga protests that the 2002 permit's discharge limitations/prohibitions exceed the federal requirement that storm water dischargers should "reduce the discharge of pollutants to the maximum extent practicable." (33 U.S.C. § 1342(p)(3)(B)(iii).) The trial court, however, found there was no evidence presented that the 2002 permit exceeded federal requirements. Because there is no evidence, the issue presented is hypothetical and, therefore, premature. (*Building Industry, supra*, 124 Cal.App.4th at p. 890.)

Additionally, as Rancho Cucamonga recognizes, *Building Industry* rejected the contention that a "regulatory permit violates federal law because it allows the Water Boards to impose municipal storm sewer control measures more

stringent than a federal standard known as 'maximum extent practicable.' [Citation.] [Fn. omitted.] . . . [W]e . . . conclude the Water Boards had the authority to include a permit provision requiring compliance with state water quality standards." (*Building Industry, supra,* 124 Cal.App.4th at p. 871.) The *Burbank* case, allowing for consideration of economic factors when federal standards are exceeded, does not alter the analysis in this case where there was no showing that federal standards were exceeded and where there was evidence that economic factors were considered. Furthermore, like the permit in *Building Industries,* the 2002 permit contemplates controlling discharge of pollutants to the maximum extent practicable through a "cooperative iterative process where the Regional Water Board and Municipality work together to identify violations of water quality standards." (*Building Industry, supra,* at p. 890.) The 2002 permit does not exceed the maximum extent practicable standard.

### 11. The Requirements of the 2002 Permit

Rancho Cucamonga lastly complains the requirements of the 2002 permit are "overly prescriptive," illegally dictating the manner of compliance and improperly delegating to the permittees the inspection duties of the State Board and the Regional Board. Rancho Cucamonga's arguments contradict the meaning and spirit of the Clean Water Act.

In creating a permit system for dischargers from municipal storm sewers, Congress intended to implement actual programs. (*National Resources Defense Council, Inc. v. Costle* (D.C. Cir. 1977) 186 U.S. App.D.C. 147 [568 F.2d 1369, 1375].) The Clean Water Act authorizes the imposition of permit conditions, including: "management practices, control techniques and system, design and engineering methods, and such other provisions as the Administrator or the State determines appropriate for the control of such pollutants." (33 U.S.C. § 1342(p)(3)(B)(iii).) The act authorizes states to issue permits with conditions necessary to carry out its provisions. (33 U.S.C. § 1342(a)(1).) The permitting agency has discretion to decide what practices, techniques, methods and other provisions are appropriate and necessary to control the discharge of pollutants. (*National Resources Defense Council v. U.S. EPA* (1992) 966 F.2d 1292, 1308.) That is what the Regional Board has created in the 2002 permit.

Rancho Cucamonga's reliance on Water Code section 13360 is misplaced because that code section involves enforcement and implementation of state water quality law, (Wat. Code, § 13300 et seq.) not compliance with the Clean Water Act (Wat. Code, § 13370 et seq.) The federal law preempts the state law. (*Burbank, supra,* 35 Cal.4th at p. 618.) The Regional Board must comply with federal law requiring detailed conditions for NPDES permits.

Furthermore, the 2002 permit does afford the permittees discretion in the manner of compliance. It is the permittees who design programs for compliance, implementing best management practices selected by the permittees in the DAMP report and approved by the Regional Board. Throughout the permit, the permittees are granted considerable autonomy and responsibility in maintaining and enforcing the appropriate legal authority; inspecting and maintaining their storm drain systems according to criteria they develop; establishing the priorities for their own inspection requirements; and establishing programs for new development. The development and implementation of programs to control the discharge of pollutants is left largely to the permittees.

More particularly, we agree with the Regional Board that the permit properly allocated some inspection duties to the permittees. As part of their ROWD application for a permit, the permittees proposed to "Conduct Inspection, Surveillance, and Monitoring. Carry out all inspections, surveillance, and monitoring procedures necessary to determine compliance and noncompliance with permit conditions including the prohibition on illicit discharges to the municipal storm drain system." The ROWD also discussed continuing existing inspection programs.

■ Water Code section 13383 provides that as part of compliance with the Clean Water Act, the Regional Board may establish inspection requirements for any pollutant discharger. Federal law, either expressly or by implication, requires NPDES permittees to perform inspections for illicit discharge prevention and detection; landfills and other waste facilities; industrial facilities; construction sites; certifications of no discharge; nonstormwater discharges; permit compliance; and local ordinance compliance. (40 C.F.R. § 122.26(d), (g) (2005); 33 U.S.C. § 1342(p)(3)(B)(ii).) Permittees must report annually on their inspection activities. (40 C.F.R. § 122.42(c)(6) (2005).)

Rancho Cucamonga claims it is being required to conduct inspections for facilities covered by other state-issued general permits. Rancho Cucamonga and the other permittees are responsible for inspecting construction and industrial sites and commercial facilities within their jurisdiction for compliance with and enforcement of local municipal ordinances and permits. But the Regional Board continues to be responsible under the 2002 NPDES permit for inspections under the general permits. The Regional Board may conduct its own inspections but permittees must still enforce their own laws at these sites. (40 C.F.R. § 122.26(d)(2) (2005).)

## 12. Disposition

Rancho Cucamonga is the only of the original 18 permittees still objecting to the 2002 NPDES permit. It has not successfully demonstrated that substantial evidence does not support the trial court's factual determinations or the trial court erred in its interpretation and application of state and federal law.

We affirm the judgment and order the prevailing parties to recover their costs on appeal.

Hollenhorst, Acting P. J., and Richli, J., concurred.

On February 27, 2006, the opinion was modified to read as printed above.