Filed 2/19/21 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY OF DUARTE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>STATE WATER RESOURCES<br>CONTROL BOARD, et al.,<br><br>    Defendants and Appellants. | G058539<br><br>(Super. Ct. No. 30-2016-00833614)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING;<br>NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed January 28, 2021, be modified as follows:

(1) On page 2, in the second full paragraph, at the end of the second sentence, after the word "upheld," add:

> as a matter of law.

(2) On page 12, in the paragraph beginning "Assuming," delete the last sentence and replace it with the following:

> We reverse the judgment because, as a matter of law, the Water Control
> Boards sufficiently considered the necessary factors under Water Code
> section 13241.

(3) On page 14, the paragraph that carries over from page 13, line 5, following the closed parenthetical, add the following:

(We note that both *Arcadia I* and *Arcadia II* followed and applied *City of Burbank v. State Water Resources Control Bd.*)

(4) On page 15, in the first paragraph under subheading 3., delete the first sentence and replace it with the following:

We conclude that the Water Control Boards sufficiently complied with their obligations to consider the Water Code section 13241 factors as a matter of law.

(5) On page 17, in the final paragraph that begins "Duarte contends," delete the first sentence and replace it with the following:

As noted *ante*, to comply with Water Code section 13241, the Regional Board must consider the costs of compliance in setting effluent limitations. (*City of Burbank v. State Water Resources Control Bd.* (2005) 35 Cal.4th 613, 625.) An issue in this case is whether the Water Control Boards sufficiently analyzed cost considerations. Duarte contends the Water Control Boards were required to do a more detailed analysis for each and every Permittee.

(6) On page 18, at the end of the paragraph that carries over from page 17, add the following new paragraph:

In a petition for rehearing, Duarte contends our holding cannot be reconciled with the California Supreme Court's decision in *City of Burbank v. State Water Resources Control Bd., supra,* 35 Cal.4th 613. But Duarte's characterization of our holding is demonstrably wrong. To repeat, this opinion concludes that the Water Control Boards complied with their obligations to consider the Water Code section 13241 factors, including compliance costs. Indeed, we have highlighted 11 of the Water Control

2

Boards' findings regarding their analyses of economic considerations, including cost considerations.

These modifications do not effect a change in judgment. The petition for rehearing is DENIED.


FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


IKOLA, J.

Filed 1/28/21 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY OF DUARTE, | |
| Plaintiff and Respondent, | G058539 |
| v. | (Super. Ct. No. 30-2016-00833614) |
| STATE WATER RESOURCES CONTROL BOARD et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of Orange County, Glenda Sanders, Judge. Reversed and remanded with directions. Appellants' request for judicial notice. Denied. Amici Curiae's request for judicial notice. Denied. Respondent's motion to augment the record on appeal. Denied.

Xavier Becerra, Attorney General, Robert W. Byrne, Assistant Attorney General, Gary E. Tavetian, Daniel M. Lucas and Jennifer Kalnins Temple, Deputy Attorneys General, for Defendants and Appellants.

Rutan & Tucker, Richard Montevideo and Travis Van Ligten for Plaintiff and Respondent.

Aleshire & Wynder and Christine M. Carson for the Cities of Lawndale, Rancho Palos Verdes, Glendora, and Signal Hill as Amici Curiae on behalf of Plaintiff and Respondent.

\* \* \*

### INTRODUCTION

This appeal involves a permit issued by state and local water control boards that requires 86 Southern California municipalities to reduce or prevent pollutants discharged through storm sewer systems by meeting numeric effluent limitations. The trial court found that, because the permit obligated the municipalities to meet more stringent standards than required by federal law, the water boards must consider the factors identified in Water Code section 13421, including but not limited to economic considerations, before issuing the permit. The trial court also found that the water boards had not sufficiently considered the section 13241 factors, and invalidated the portions of the permit that imposed the numeric effluent limitations.

For purposes of this appeal, we assume but do not decide that the permit required more than what federal law requires and, therefore, we must review the water boards' consideration of the Water Code section 13241 factors. As to those factors, we hold that, under the applicable standard of review, and giving appropriate consideration to the state and local water boards' expertise and discretion in the interpretation of the statute, the permit's numeric effluent limitations must be upheld. We publish this opinion because we believe it is important to provide an example of the level of consideration of the factors that is sufficient—especially the economic considerations factor that is not defined by section 13241. Our analysis of the issues under consideration by the water boards leads us to conclude their consideration of the relevant factors, identified in part II.B. of the Discussion section, was sufficient.

2

We reverse the judgment and direct the trial court to deny the petition for writ of mandate and enter judgment in favor of Appellants the State Water Resources Control Board and the Regional Water Quality Control Board, Los Angeles Region.

## BACKGROUND

### I.

### CALIFORNIA'S WATER CODE AND THE FEDERAL CLEAN WATER ACT

In 1969, California enacted the Porter-Cologne Water Quality Control Act (Wat. Code, § 13000 et seq.) to create "a statewide program for the control of the quality of all the waters of the state." (*Id.*, § 13000.) "[A]ctivities and factors which may affect the quality of the waters of the state shall be regulated to attain the highest water quality which is reasonable, considering all demands being made and to be made on those waters and the total values involved, beneficial and detrimental, economic and social, tangible and intangible." (*Ibid.*)

In 1972, the federal government enacted the Federal Water Pollution Control Act (33 U.S.C. § 1251 et seq.), known as the Clean Water Act, "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." (*Id.*, § 1251(a).) The Clean Water Act requires that California regularly review water quality standards and set controls necessary to support the designated beneficial uses of the bodies of water within the state. (33 U.S.C. § 1313(c), (d); Wat. Code, §§ 13050, subd. (h), 13241; 40 C.F.R. §§ 130.2(d), 130.3.) The Clean Water Act prohibits the discharge of pollutants through a "point source" into navigable waters unless the discharge is pursuant to a National Pollutant Discharge Elimination System (NPDES) permit. (33 U.S.C. §§ 1311(a), 1342.)

Municipal separate storm sewer systems (MS4s) are point sources requiring an NPDES permit. (33 U.S.C. § 1342(p)(3)(B); 40 C.F.R. § 122.26(a)(iii).) MS4s are designed to collect storm water, which consists of "storm water runoff, snow melt runoff, and surface runoff and drainage." (40 C.F.R. § 122.26(b)(13).) As noted in the permit at

3

issue in this case, storm water discharges must be regulated because they "are often contaminated with pesticides, fertilizers, fecal indicator bacteria and associated pathogens, trash, automotive byproducts, and many other toxic substances generated by activities in the urban environment. Water that flows over streets, parking lots, construction sites, and industrial, commercial, residential, and municipal areas carries these untreated pollutants through the MS4 directly into the receiving waters of the Region. The water quality impacts, ecosystem impacts, and increased public health risks from MS4 discharges that affect receiving waters nationwide and throughout Los Angeles County, including its coastline, are well documented."

NPDES permits set water quality-based effluent limitations (WQBELs) that restrict the amount of pollutants that may be discharged if there is a "reasonable potential" to cause or contribute to an excursion above the water quality standards. (40 C.F.R.§ 122.44(a), (d)(1)(iii).) "WQBEL's implement water quality standards." (*Communities for a Better Environment v. State Water Resources Control Bd.* (2003) 109 Cal.App.4th 1089, 1094.)

If a body of water does not meet the water quality standards, the state must establish a Total Maximum Daily Load (TMDL) for each pollutant above the applicable standard. A TMDL sets the total allowable quantity of a pollutant that may be discharged into a waterway while supporting its beneficial uses. (33 U.S.C. § 1313(d)(1)(A) & (C); 40 C.F.R. § 130.2(i); see *San Joaquin River Exchange Contractors Water Authority v. State Water Resources Control Bd.* (2010) 183 Cal.App.4th 1110, 1115.) Thirty-three (33) TMDLs have been established for MS4 discharges in the Los Angeles region.

## II.

### EFFLUENT LIMITATIONS

An effluent limitation is a restriction "on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters." (33 U.S.C. § 1362(11).)

4

"Effluent limitations are a means of *achieving* water quality standards." (*Trustees for Alaska v. Environmental Protection Agency* (9th Cir. 1984) 749 F.2d 549, 557.) Effluent limitations may either be numeric or based on best management practices (BMP). (40 C.F.R. § 122.44(k).)

Permits for discharges from MS4s "(i) may be issued on a system- or jurisdiction-wide basis; [¶] (ii) shall include a requirement to effectively prohibit non-stormwater discharges into the storm sewers; and [¶] (iii) shall require controls to reduce the discharge of pollutants to the maximum extent practicable, including management practices, control techniques and system, design and engineering methods, and such other provisions as the Administrator or the State determines appropriate for the control of such pollutants." (33 U.S.C. § 1342(p)(3)(B).) "The permitting agency has discretion to decide what practices, techniques, methods and other provisions are appropriate and necessary to control the discharge of pollutants." (*City of Rancho Cucamonga v. Regional Water Quality Control Bd.* (2006) 135 Cal.App.4th 1377, 1389.)

### III.

THE PARTIES AND THE PERMIT AT ISSUE

The State Water Resources Control Board (State Board) is a California state agency created pursuant to Water Code sections 174 et seq. and 13160 and is charged with formulating and adopting state policy for water quality control within the State of California. (Wat. Code, § 13140.) The Regional Water Quality Control Board, Los Angeles Region (Regional Board), is a regional agency created pursuant to the provisions of Water Code section 13200 et seq., and is one of nine regional water quality control boards which operates under the purview of the State Board. (Wat. Code, § 13263, subd. (a).) We shall refer to the State Board and the Regional Board together as the Water Control Boards.

In November 2012, the Regional Board issued an NPDES permit to 86 municipal entities in Los Angeles County (the Permittees), Order No. R4-2012-0175,

5

NPDES Permit No. CAS004001. In June 2015, the State Board upheld the permit with modifications in Order No. WQ-2015-0075. We shall refer to the modified NPDES permit as the Permit.

The Permit defines the measures the Permittees must take to prevent or reduce the amount of pollutants discharged via their MS4s and includes numeric effluent limitations. The City of Duarte (Duarte), the named petitioner in this case, owns and operates an MS4 and is one of the Permittees.

In the State Board's order upholding and modifying the Regional Board's 2012 permit, the State Board noted that, while all MS4 discharges must reduce pollutants to the maximum extent practicable, strict compliance with water quality standards by imposing numeric effluent limitations is at the discretion of the permitting agency. The State Board further noted that many MS4s within the Los Angeles water basin were not meeting existing water quality standards using best management practices. Therefore, the State Board approved the Regional Board's decision to adopt numeric WQBELs rather than best management practices -based WQBELs in the Permit.

## PROCEDURAL HISTORY

In July 2015, Duarte filed a petition for writ of mandate and complaint for injunctive and declaratory relief in the Los Angeles County Superior Court. Duarte alleged that the Water Control Boards failed to proceed as required by law and abused their discretion in imposing the numeric effluent limitations in the Permit. The City of Gardena (Gardena) filed a similar petition that same month (the Gardena case); this case and the Gardena case were deemed to be related, but were not ordered to be consolidated. In December 2015, pursuant to Water Code section 13361, subdivision (b), the related cases were transferred to the Orange County Superior Court.

Following motions for judgment on the pleadings, the trial court dismissed the claims for traditional mandamus, declaratory relief, and injunctive relief, which left only claims for a peremptory writ of mandate under Code of Civil Procedure

6

section 1094.5.  The court conducted a joint trial in this case and the Gardena case on multiple days between November 2017 and April 2018, and conducted further hearings on the related matters in July and August 2018.

In April 2019, the trial court issued a detailed amended ruling granting the petitions for writ of mandate.  The trial court found (1) the Permit's numeric effluent limitations were more stringent than what is required by federal law; and (2) the Water Control Boards failed to comply with Water Code section 13241 in adopting the numeric effluent limitations.

In September 2019, the trial court issued a writ of mandate and a judgment in favor of Duarte, both of which ordered the Water Control Boards to "[s]et aside each and every one of the provisions in the Permit pertaining in any way to any and all Numeric Effluent Limits, and to reconsider the Permit."[1]  The Water Control Boards filed a timely notice of appeal.[2]

---

[1]  The same language was used in the writ and judgment in the Gardena case.

[2]  The Water Control Boards filed a request for judicial notice of 27 state regulations setting TMDLs for various pollutants within the area covered by the Permit.  The Water Control Boards contend these regulations are "relevant to the legal and factual foundation" for the Permit.  According to the Water Control Boards, "the very existence of the TMDLs triggered federal regulations that require all NPDES permits to contain 'effluent limitations' consistent with TMDL wasteload allocations.  (40 C.F.R. § 122.44(d)(1)(vii)(B); *Communities for a Better Env't v. State Water Resources Control Bd.* (2005) 132 Cal.App.4th 1313, 1322.)"  They offer the regulations as "clear and concise summar[ies] of the adopted regulatory provisions," which themselves are a part of the administrative record, and ask that this court take judicial notice only of the existence of the regulations, and not of the truth of any matter stated within them.  State regulations are proper matters of judicial notice.  (Evid. Code, § 452, subd. (b); *Center for Biological Diversity v. County of San Bernardino* (2016) 247 Cal.App.4th 326, 345, fn. 5.)  It is undisputed that these regulations are not part of the administrative record or the appellate record, and were never presented to the trial court.  The exhibits attached to the Water Control Boards' request for judicial notice appear to be summaries of the TMDLs in the administrative record.  (Compare Request for Judicial Notice, Exh. 1, Cal. Code Regs., tit. 23, § 3939.6, with RB-AR36087 to RB-AR36093.)  Because the TMDLs are already a part of our record, the summaries from the Code of Regulations would be duplicative.  We therefore deny the Water Control Boards' request for judicial notice of

7

I.

STANDARD OF REVIEW

An aggrieved party may challenge a regional board's final decision or order by means of a petition for writ of mandate in the superior court. (*Barclay Hollander Corp. v. California Regional Water Quality Control Bd.* (2019) 38 Cal.App.5th 479, 497 (*Barclay*).) If a claim is made that the regional board's findings are not supported by the evidence, then, in accordance with Code of Civil Procedure section 1094.5, subdivision (c), the court exercises independent judgment on the evidence. (*Barclay, supra,* at p. 497.) "'In exercising its independent judgment, a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence.'" (*Ibid.*) The regional board abused its discretion if the court determines, in light of the whole record, that the board's findings are not supported by substantial evidence. (*Id.* at pp. 497-498.)

If the trial court was required to review the administrative decision under the independent judgment standard, then the appellate court reviews the trial court's factual findings under the substantial evidence standard and its legal conclusions under the de novo standard. (*Barclay, supra*, 38 Cal.App.5th at pp. 498.) The appellate court is not bound by legal conclusions made by the state or regional agencies or the trial court; however, the appellate court must "'give appropriate consideration to an administrative

---

Exhibits 1 through 27, filed on May 14, 2020.

agency's expertise underlying its interpretation of an applicable statute.'" (*Barclay, supra*, 38 Cal.App.5th at p. 498.)[3]

## II.

### ASSUMING THE PERMIT'S TERMS WERE MORE STRINGENT THAN THE APPLICABLE FEDERAL LAW, THE WATER CONTROL BOARDS SUFFICIENTLY CONSIDERED THE NECESSARY FACTORS UNDER WATER CODE SECTION 13241.

All parties agree that the issue in this case is two-fold: (1) Do the numeric effluent limitations in the Permit require more than is required under federal law? (2) If so, did the Water Control Boards sufficiently consider the economic considerations factor required by Water Code section 13241 before issuing the Permit?

### A.

*WE ASSUME WITHOUT DECIDING THAT THE PERMIT'S TERMS WERE MORE STRINGENT THAN FEDERAL LAW.*

The Water Control Boards found that the numeric effluent limitations in the Permit were not more stringent than the requirements of the Clean Water Act. On appeal,

---

[3] In the amended ruling, the trial court specifically noted that no party had requested a statement of decision. We provided the parties with the opportunity to address whether or not a statement of decision had been requested, and whether and how that would affect the standard of review. Both the Water Control Boards and Duarte filed supplemental letter briefs. Having reviewed those letter briefs and considered the arguments, authorities, and record references therein, we conclude that no party requested a statement of decision in compliance with the Code of Civil Procedure and California Rules of Court, rule 3.1590. The scope of our review is therefore limited to determining whether there is any error of law in the trial court's decision and whether substantial evidence supports the judgment. With respect to the express findings in the amended ruling, the standard of review is the same as if there were a statement of decision; we shall not infer findings under the doctrine of implied findings. The Water Control Boards argue that there was a timely request for a statement of decision under the Code of Civil Procedure and the California Rules of Court, and the trial court erred in failing to issue one. Even if the Water Control Boards were correct, any error was harmless because the trial court issued extensive, express findings addressing all controverted issues. Duarte filed a motion to augment the appellate record in support of its letter brief on the issue of a statement of decision. In light of the foregoing, we conclude that the motion is moot, and is therefore denied.

they argue this finding was not contrary to the weight of the evidence (*Barclay, supra,* 38 Cal.App.5th at pp. 497-498) and the trial court should have given it deference.

Duarte argued at trial that the numeric effluent limits in the Permit were more stringent than what was required by the Clean Water Act, and that the Water Control Boards were therefore required to consider the factors set forth in Water Code section 13241. The trial court agreed.

The trial court found that whether the numeric effluent limits imposed by the Permit were more stringent than the requirements of the Clean Water Act was a question of law, meaning that the trial court did not have to defer to the Water Control Boards' findings on whether the numeric effluent limits were more stringent than the "maximum extent practicable" standard.

The trial court then noted that the Clean Water Act requires that NPDES permits be issued for stormwater discharges, but provides different requirements for industrial discharges and municipal discharges. Whether the Permit's requirements are more stringent than federal law focuses on two sections of the Clean Water Act: sections 1311 and 1342 of title 33 of the United States Code. Section 1311 requires that effluent limitations be established according to specific timetables. Section 1342 authorizes and establishes the procedures for NPDES permits. NPDES permits for *industrial* activity must meet all provisions of both sections 1311 and 1342. (33 U.S.C. § 1342(p)(3)(A).) *Municipal* storm sewer discharge permits are not required to comply with section 1311; rather than cross-referencing the statute regarding effluent limits, section 1342 provides that municipal permits "shall require controls to reduce the discharge of pollutants to the maximum extent practicable, including management practices, control techniques and system, design and engineering methods, and such other provisions as the Administrator or the State determines appropriate for the control of such pollutants." (*Id.*, § 1342(p)(3)(B)(iii).)

In *Defenders of Wildlife v. Browner* (9th Cir. 1999) 191 F.3d 1159, the Ninth Circuit held that the language of the Clean Water Act "unambiguously demonstrates that Congress did not require municipal storm-sewer discharges to comply strictly with 33 U.S.C. § 1311(b)(1)(C)" (191 F.3d at p. 1164), and the requirements of section 1311 are "more stringent" than those of section 1342 (191 F.3d at pp. 1165-1166). Based on those holdings, the trial court in this case found that the requirements of the Permit were more stringent than federal law because the Permit imposed numeric effluent limitations while federal law does not require municipal dischargers such as the Permittees to comply with numeric effluent limitation requirements under section 1311 of title 33 of the United States Code.

On appeal, the Water Control Boards argue that "the permit terms did not exceed federal standards because the imposed terms were necessitated by the Clean Water Act and federal regulations that require all NPDES permits to include provisions appropriate for the control of pollutants, including effluent limitations consistent with applicable [TMDL] wasteload allocations." The Water Control Boards also argue that the trial court should not merely have considered whether the numeric effluent limitations were more stringent than the maximum extent practicable standard because the latter standard "is not the ceiling for [the] Clean Water Act authority to impose requirements in an MS4 permit." The Water Control Boards argue that the trial court should have deferred to their finding that the numeric effluent limitations were "both appropriate and necessary for the control of relevant pollutants."

All parties have fully addressed the issue of whether the terms of the Permit are more or less stringent than federal law allows. For purposes of this appeal, however, we need not reach this issue. We shall assume without deciding that the Permit's requirement of numeric effluent limitations was more stringent than federal law. This determination takes us to the second issue presented by this appeal: Whether the Water

11

Control Boards sufficiently considered the necessary factors under Water Code section 13241.

B.

*THE WATER CONTROL BOARDS GAVE SUFFICIENT CONSIDERATION TO THE ECONOMIC EFFECTS OF THE PERMIT'S TERMS.*

Assuming the Permit's numeric effluent limitations were more stringent than federal law, the Water Control Boards were required to consider the factors set forth in Water Code section 13241 before issuing the Permit. The trial court found, and Duarte argues on appeal, that the Water Control Boards failed to sufficiently consider section 13241, subdivision (d)—economic considerations. Having reviewed the findings in the Permit, as well as the support for those findings in the appellate record and the administrative record, we conclude that the Water Control Boards gave sufficient consideration to the economic effects of the terms imposed by the Permit. As stated previously, we review the trial court's factual findings under the substantial evidence standard and its legal conclusions under the de novo standard, and we are not bound by justthe legal conclusions made by the state or regional agency or the trial court. (*Barclay, supra,* 38 Cal.App.5th at p. 498.)[4] We reverse the judgment because the Water Control Boards properly exercised their discretion in considering the necessary factors under Water Code section 13241.

1.

*Water Code section 13241*

The Water Control Boards argue the trial court's finding that their consideration of the costs of compliance was insufficient was based on an erroneous

---

[4] Duarte argues that this court must review the trial court's findings under the substantial evidence standard, without reference to the Water Control Boards' findings. Whether an agency has failed to perform its obligations under a state law is a mixed question of law and fact.

interpretation and application of Water Code section 13241. That statute provides as follows:

"Each regional board shall establish such water quality objectives in water quality control plans as in its judgment will ensure the reasonable protection of beneficial uses and the prevention of nuisance; however, it is recognized that it may be possible for the quality of water to be changed to some degree without unreasonably affecting beneficial uses. Factors to be considered by a regional board in establishing water quality objectives shall include, but not necessarily be limited to, all of the following:

"(a) Past, present, and probable future beneficial uses of water.

"(b) Environmental characteristics of the hydrographic unit under consideration, including the quality of water available thereto.

"(c) Water quality conditions that could reasonably be achieved through the coordinated control of all factors which affect water quality in the area.

"(d) Economic considerations.

"(e) The need for developing housing within the region.

"(f) The need to develop and use recycled water." (Wat. Code, § 13241.)

To comply with Water Code section 13241, subdivision (d), "a regional board [must] consider the cost of compliance when setting effluent limitations in a wastewater discharge permit." (*City of Burbank v. State Water Resources Control Bd.* (2005) 35 Cal.4th 613, 625.) However, there is no case law defining "economic considerations" or describing how an agency may comply with its statutory obligations. (*City of Arcadia v. State Water Resources Control Bd.* (2006) 135 Cal.App.4th 1392, 1415 (*Arcadia I*) ["there is no reported opinion analyzing the 'economic considerations' phrase of this statute"].)

The manner in which the Water Control Boards consider and comply with Water Code section 13241 is within their discretion. (*City of Arcadia v. State Water Resources Control Bd.* (2010) 191 Cal.App.4th 156, 177 (*Arcadia II*) ["Section 13241

13

does not specify how a water board must go about considering the specified factors. Nor does it require the board to make specific findings on the factors"]; *Arcadia I*, 135 Cal.App.4th at p. 1415 [because the statute does not define economic considerations or specify how the agencies should comply with the determination of factors, "the matter is within a regional board's discretion"].) We review the Water Control Boards' exercise of their discretion under *Barclay, supra,* 38 Cal.App.5th at pages 497-498.

Further, in reviewing the Water Control Boards' actions, the trial court had to presume that all official duties had been regularly performed (Evid. Code, § 664; *Arcadia II, supra,* 191 Cal.App.4th at p. 177) and had to review the administrative record to determine whether there was evidence that the Water Control Boards had failed to comply with the statutory requirements (*Arcadia II, supra,* 191 Cal.App.4th at p. 177).

2.

*The Trial Court's Analysis*

The trial court found that the Permit did not comply with Water Code section 13241 because it "does not, at any point, include any reference to or estimate of the possible cost or range of costs of compliance with numeric WQBELs." The court found that the economic considerations included in the Permit consisted only of the costs of compliance with an earlier permit, costs included in a 2004 study, and an acknowledgement that "Permittees will incur costs in implementing this Order above and beyond the costs from the Permittee's prior permit." The court found this was insufficient: "Economic considerations must begin with *some kind of estimate of cost*." The court also found that the Permit's reference to allowing the Permittees to share costs of compliance and to phase in implementation in order to avoid significant initial cost outlays did not address the economic considerations factor of Water Code section 13241. "[The Water Control Boards'] conclusory findings do not reveal the route from evidence to action and are inadequate to support compliance with § 13241. Put differently, in the words of the California Supreme Court, [the Water Control Boards'] decision in

14

approving the 2012 Permit is not supported by facts essential to sustain its decision. *Environmental Protection Information Center* [*v. California Dept. of Forestry & Fire Protection* (2008) 44 Cal.4th 459,] 516-517."

The Water Control Boards did not provide estimates of the costs for any of the individual Permittees to comply with the Permit. Instead, as detailed in the next section, the Water Control Boards made extensive findings on, among other things, the nature, extent, ranges, averages, and variability of the costs to be incurred by the Permittees. The question is whether that level of specificity is necessary to fulfill Water Code section 13241's requirement that, in an appropriate case, economic considerations must be fully considered.

3.

*Our Analysis and Conclusion*

We conclude that the Water Control Boards sufficiently complied with their obligations to consider the Water Code section 13241 factors. The Regional Board developed an economic analysis of the Permit's requirements, consistent with Water Code section 13241.

The Permit includes the following findings regarding the analysis of the economic considerations of both regulating and not regulating MS4 discharges:

(a) "Permittees will incur costs in implementing this Order above and beyond the costs from the Permittees' prior permit. Such costs will be incurred in complying with the post-construction, hydromodification, Low Impact Development, TMDL, and monitoring and reporting requirements of this Order."

(b) The Permit allows Permittees significant flexibility in how to meet the effluent limitations, which makes it difficult to provide concrete cost estimates for the Permittees.

15

(c) "[T]he cost of complying with TMDL wasteload allocations has been previously considered during the adoption of each TMDL. The costs of complying with the water quality based effluent limitations and receiving water limitations derived from the 33 TMDLs, which are incorporated into this Order, are not additive."

(d) The cost of regulating MS4 discharges is highly variable among the Permittees.

(e) The Regional Board determined the costs to Permittees by using the Permittees' self-reported data and stormwater cost studies.

(f) The Permittees' 2010-2011 average cost of compliance with existing MS4 programs was $4,090,876, with a median cost of $687,633. When compliance costs that are not completely tied to MS4 programs (such as street sweeping and trash collection) are removed, the adjusted average cost drops to about $2.4 million with a median cost of $290,000. The mean adjusted per household cost was $42.57 and the median adjusted per household cost was $17.89.

(g) The benefits of storm water and urban runoff management programs would considerably exceed the costs of such programs.

(h) Failure to regulate MS4 discharges would have significant economic impacts in terms of health-related expenses and loss of tourism revenues.

(i) The federal Environmental Protection Agency estimated household willingness to pay for improvements in water quality for fishing and boating ranged between $158 and $210 per year.

(j) A Stormwater Cost Survey prepared in 2005 for the State Board reported that households were willing to pay $180 annually for statewide clean water.

16

(k) Almost $650 million in state, local, and federal funding was currently allocated to storm water management projects in Los Angeles County, and an additional $300 million would potentially be available if fee proposals were approved by the Los Angeles County Flood Control District Board of Supervisors.

The Water Control Boards' analysis of the economic considerations identified in the Permit satisfied their obligation to consider the subdivision (d) factor of Water Code section 13241. Among other things, the Water Control Boards explained that the cost of regulating MS4 discharges is "highly variable" among the Permittees, provided ranges and averages of cost data and economic impacts in several categories, considered how much more the Permittees' costs might be under the Permit's terms, identified potential sources of funds to cover the costs of the Permit, and concluded the failure to regulate would increase health-related expenses. The Water Control Boards' analysis of economic considerations was well within its discretion.

We note that the above is not an exclusive list of the facts to be considered under Water Code section 13241, subdivision (d). Indeed, every case arising under this statute will differ as to what economic considerations must be evaluated. We are concerned in this opinion with what the Water Control Boards considered in the process of issuing the Permit: Our discussion of the Water Control Boards' consideration of the section 13241 factors is intended to provide an analytical framework. This opinion illustrates by example the extent of the Water Control Boards' discretion; that discretion is not unlimited and is subject to judicial review. Here, the record showed that the Water Control Boards explained their reasoning and acted within their discretion.

Duarte contends the Water Control Boards abused their discretion as a matter of law because they failed to analyze economic considerations on a more detailed level for each and every Permittee. But there is no support in precedent for such an extensive requirement. Indeed, there is "no authority for the proposition that a

17

consideration of economic factors under Water Code section 13241 must include an analysis of every conceivable compliance method or combinations thereof or the fiscal impacts on permittees." (*Arcadia I, supra,* 135 Cal.App.4th at p. 1417.) Further, a TMDL that includes "estimated costs of several types of compliance methods and a cost comparison of capital costs and costs of operation and maintenance . . . [¶] is adequate and does not fulfill the arbitrary or capricious standard." (*Arcadia I, supra*, 135 Cal.App.4th at pp. 1417-1418.)

Amici Curiae argue that the economic situation resulting from the COVID-19 pandemic establishes the need for the Water Control Boards to consider the costs to the Permittees. Without minimizing in any way the exceptional financial downturn suffered throughout California and the entire country as a result of the COVID-19 pandemic, we reject Amici Curiae's argument for two reasons. First, the Water Control Boards are charged with taking into account economic considerations, not merely costs of compliance with a permit. As noted, economic considerations also include, among other things, the costs of not addressing the problems of contaminated water. Second, state and federal law provide the framework within which the Water Code section 12341 factors must be considered; later changes in the global economy are not relevant to whether the Water Control Boards complied with their statutory obligations in 2012 and 2015.[5]

---

[5] We deny Amici Curiae's request for judicial notice of the 2020-2021 California State Budget, which was offered solely in connection with this argument. The budget is not relevant to whether the Water Control Boards complied with their duties in approving the Permit.

18

**DISPOSITION**

The judgment is reversed and the matter is remanded with directions to the trial court to deny the petition for writ of mandate and enter judgment in favor of Appellants.  Appellants to recover costs on appeal.


FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


IKOLA, J.