[No. B203097. Second Dist., Div. Eight. Sept. 25, 2008.]

DAVID HERNANDEZ et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

14

## COUNSEL

Eric Grant; Sterling E. Norris; Law Office of Anthony T. Caso and Anthony T. Caso for Plaintiffs and Appellants.

Rockard J. Delgadillo, City Attorney, Valerie L. Flores and Harit U. Trivedi, Deputy City Attorneys, for Defendants and Respondents City of Los Angeles and the Los Angeles City Council.

Raymond G. Fortner, Jr., County Counsel, and Judy W. Whitehurst, Deputy County Counsel, for Defendant and Respondent County of Los Angeles.

Kaufman Downing, Stephen J. Kaufman and Steven J. Reyes for the League of Women Voters of Los Angeles and the Los Angeles Area Chamber of Commerce as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**FLIER, J.**—Appellants, electors of the City of Los Angeles, asserted a postelection challenge to Measure R, a ballot measure approved by Los Angeles voters at the November 7, 2006 Consolidated General Election. The measure (1) amends the city charter to change the number of terms a city council member can serve from two 4-year terms to three 4-year terms; (2) amends the city charter to prohibit lobbyists from being appointed as city commissioners and to prohibit campaign contributions from lobbyists and lobbying firms to officials and candidates; and (3) makes several revisions to the city's ethics laws by ordinance.

Appellants filed a petition for writ of mandate in the superior court, seeking an order directing the County of Los Angeles (County), which administered the election, and the City of Los Angeles (City) to cease and

desist from any action to implement Measure R and to repeal any changes in the city charter or Los Angeles Municipal Code taken to implement the measure.[1] The superior court denied the petition finding that because Measure R was not an initiative, the single subject rule imposed by the California Constitution does not apply. Appellants appeal, asserting Measure R violates the California Constitution, article II, section 8, subdivision (d), the "single subject rule."[2] We affirm the judgment and denial of appellants' motion to vacate.

This is the third time an issue related to Measure R has been before this court. There were two preelection challenges to Measure R. In the first preelection case, this court issued a published opinion upholding the legality of the ballot title of Measure R. (*Martinez v. Superior Court* (2006) 142 Cal.App.4th 1245, 1248 [48 Cal.Rptr.3d 660] (*Pasley*).) In the second preelection case, *Martinez v. Superior Court*, No. B193531 (*Donner*), this court, in an order to show cause issued on September 20, 2006, denied preelection review and directed that the measure be included on the November 2006 ballot.[3]

## FACTS

Measure R originated in a proposal conceived by the Los Angeles Area Chamber of Commerce (Chamber) and the League of Women Voters of Los Angeles (League). In July 2006, the Chamber and the League in a letter to the city council presented a comprehensive reform measure, entitled "City Government Responsibility, Lobbying and Ethics Reform Act." The Chamber and League asked the city council to place the measure on the November 7, 2006 Los Angeles City ballot. The stated purpose of the proposal was "to create greater efficiency, accountability and transparency within Los Angeles City government." The Chamber and League urged that "we need to create an

---

[1] Respondent Los Angeles City Council (city council) appeared as the real party in interest in the court below. Because they are united in interest, we sometimes refer to the City and the city council jointly as the "City."

Respondent County has filed a brief stating it took no position as to appellants' petition in the superior court. The County's only role with respect to Measure R was to conduct the election, and to calculate and certify the results of the election. Its involvement had already ended when appellants brought the petition for writ of mandate at issue. Therefore, the County indicates it is taking no position on the merits of this appeal.

[2] The single subject rule provides that "[a]n initiative measure embracing more than one subject may not be submitted to the electors or have any effect." (Cal. Const., art. II, § 8, subd. (d).)

[3] As discussed *post*, once the measure was passed by the voters, the superior court vacated the underlying judgment at Donner's request. We discharged the order to show cause and dismissed the pending petition for writ of mandate as moot before the date of the scheduled hearing.

environment which encourages elected officials to focus on their current job, long as well as short term issues, and not on their next position."

The Chamber and League asked the city council to place their proposal on the November 2006 election ballot as a city-council-sponsored ballot measure.

The city council agreed to do so and adopted a motion directing the city attorney to draft an appropriate ordinance and resolutions to place the proposal on the November 2006 ballot. Pursuant to this directive, the city attorney prepared ordinances and associated resolutions to substantially reflect the language presented by the Chamber and League. In doing so, the city attorney revised the language of the proposal to conform to City standards and made other substantive revisions. In a report to the city council, the city attorney observed there was an alternative way to present the measure to the voters. He nevertheless approved as to form and legality the city council's election to place all of the provisions suggested in the Chamber and League proposal on the November 2006 ballot.

Los Angeles voters approved Measure R at the November 7, 2006 statewide general election, by a margin of 59.53 percent to 40.47 percent (375,433 "yes" votes to 255,242 "no" votes).

## PROCEDURAL HISTORY

In December 2006, appellants brought the present challenge to Measure R as a petition for writ of mandate against the County and the City.

After briefing and hearing, the trial court concluded that Measure R violated the single subject rule, stating: "the ultimate purpose of the single subject requirement of the California Constitution is to prevent politicians and special interests from manipulating the initiative process by bundling together measures to force voters to accept all or none of them, when, if they were submitted to the voters separately, the voters would likely accept some and reject others. Such manipulation is precisely the effect of the bundling in this case. It is likely that many voters would vote one way on the anti-lobbying and ethics provisions of Measure R, and the opposite way on the term limits provisions, if they were given an opportunity to do [so]." The trial court, however, found the single subject rule did not apply to Measure R because it was not an initiative.

The court found that the city council did not propose an initiative when it voted to submit Measure R to the voters, and the single subject requirement imposed by the California Constitution upon initiative measures did not apply

to the measure. The court therefore denied appellants' petition for writ of mandate and entered a judgment in favor of respondents. The court later denied appellants' motion to vacate the judgment.

Appellants timely appeal from the judgment and order denying their motion to vacate the judgment.[4]

## STANDARD OF REVIEW

This court's review of the trial court's legal determinations is de novo. (See, e.g., *City of Rancho Cucamonga v. Regional Water Quality Control Bd.* (2006) 135 Cal.App.4th 1377, 1384 [38 Cal.Rptr.3d 450].) We determine whether substantial evidence supports the trial court's factual determinations. (*Ibid.*)

## DISCUSSION

1. *Presumption of Validity*

At the outset, we address the City's argument that Measure R deserves a presumption of validity because of this court's prior ruling in *Pasley, supra,* 142 Cal.App.4th 1245, and because the voters "overwhelmingly" approved Measure R at the November 2006 election. Relying on *Senate of the State of Cal. v. Jones* (1999) 21 Cal.4th 1142, 1153–1155 [90 Cal.Rptr.2d 810, 988 P.2d 1089] (*Jones*), the City argues our Supreme Court has held that a court's refusal to grant preelection review in a single subject case means the challengers have not established a strong likelihood the measure is invalid. They further assert it is " ' " 'wholly unjustified' " ' " to allow the voters to pass a measure only to confront the voters with a judicial decree that the voters' action was " ' " 'in vain.' " ' " (*Id.* at pp. 1154–1155.) We disagree.

■ *Jones* stated only that "preelection review might be appropriate upon a 'clear showing of invalidity.' " (*Jones, supra,* 21 Cal.4th at p. 1154, quoting *Brosnahan v. Eu* (1982) 31 Cal.3d 1, 4 [181 Cal.Rptr. 100, 641 P.2d 200] (*Brosnahan I*).) As the high court has explained, "a majority of the court in *Brosnahan I* was not persuaded that, in that instance, the challenged

---

[4] On appeal, the City and amici curiae Chamber and League have asked this court to take judicial notice of several documents not presented to the trial court or not in existence at the time of trial proceedings. We deferred ruling on these requests and now deny them as such documents are not relevant or necessary to the issues decided on this appeal.

initiative violated the single-subject rule" and thus had deferred ruling on the merits of a single subject challenge to the initiative at issue until after the election. (*Jones, supra*, at p. 1154.) Absent some clear showing of invalidity, the court further elucidated, "it is usually more appropriate to review constitutional and other challenges to ballot propositions or initiative measures after an election rather than to disrupt the electoral process by preventing the exercise of the people's franchise . . . ." (*Brosnahan I, supra*, at p. 4.)

■ The City overstates the implication of *Jones*'s discussion to the case at hand. In *Pasley*, we examined only the issue whether the *ballot title* adopted by the city council for Measure R "complies with [the] election law." (*Pasley, supra*, 142 Cal.App.4th at pp. 1246–1247.) We held that the ballot *title* was neither false nor misleading and that it was not partial to one side. (*Id.* at p. 1248.) We did not reach the merits of whether the ballot measure violated the single subject rule or, indeed, whether that rule applied to the measure. An opinion is authority only for a proposition actually considered and decided. (*In re Chavez* (2003) 30 Cal.4th 643, 656 [134 Cal.Rptr.2d 54, 68 P.3d 347].)

The issue whether Measure R is subject to or violated the single subject rule was squarely before us in *Donner*. The *Donner* matter came before us after the superior court, on September 7, 2006, directed the issuance of a peremptory writ of mandate ordering the County registrar-recorder and the city clerk to remove Measure R from the November 2006 election ballot.

The City sought relief by filing a petition for writ of mandate with this court, and we issued an emergency order on September 8, 2006, directing the superior court to show cause why it should not be compelled to (1) vacate its order and judgment in *Donner* and (2) issue a new and different order denying the petition in that matter. We also issued a temporary stay order, thereby allowing Measure R to go before the Los Angeles voters on the November 7, 2006 ballot. We indicated that "[b]ecause the petition [before this court] raises significant legal issues of great public importance, we intend to decide the petition on the merits."

Subsequently, on September 29, 2006, after allowing further briefing, we issued an order to the effect that we had concluded preelection review was inappropriate, on the basis of the briefs submitted and our review of applicable law. We scheduled oral argument on the City's petition for writ of mandate for our first regularly scheduled calendar date after the election.

Before our hearing and following the voters' passage of Measure R on November 7, 2006, the trial court vacated the judgment in *Donner* at the petitioner's request and with our concurrence. At the City's request, we discharged our existing order to show cause and dismissed as moot the petition for writ of mandate filed on September 7, 2006.

Our declining to conduct a preelection substantive review of Measure R was a preliminary determination there was no " 'clear showing of invalidity' " (*Jones, supra,* 21 Cal.4th at p. 1154), no more and no less. "The general rule favoring postelection review contemplates that no serious consequences will result if consideration of the validity of a measure is delayed until after an election. Under those circumstances, the normal arguments in favor of the 'passive virtues' suggest that a court not adjudicate an issue until it is clearly required to do so. If the measure passes, there will be ample time to rule on its validity. If it fails, judicial action will not be required." (*Legislature v. Deukmejian* (1983) 34 Cal.3d 658, 666 [194 Cal.Rptr. 781, 669 P.2d 17].)

Lacking a clear showing of invalidity, we concluded a substantive review should be deferred until after Measure R was placed before the electorate. In so deciding, we determined the court's interest in a careful and full consideration of the issues took precedence over any potential voter confusion that might result from a postelection judicial decree invalidating the ballot measure.

Because *Donner* was dismissed postelection, however, this court did not have occasion to substantively address or determine whether Measure R is subject to or violated California Constitution, article II, section 8, subdivision (d). We are not foreclosed from addressing the issue by the prior proceedings. (See *George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1289–1290 [265 Cal.Rptr. 162, 783 P.2d 749]; *People v. Scott* (2000) 85 Cal.App.4th 905, 919 [102 Cal.Rptr.2d 622].) We do so now and find Measure R is not subject to the single subject rule.

2. *Validity of Measure R*

Appellants claim Measure R is subject to, and violates, the single subject rule providing that "[a]n *initiative* measure embracing more than one subject may not be submitted to the electors or have any effect." (Cal. Const., art. II, § 8, subd. (d), italics added.)

Appellants argue that the California Supreme Court "has equated the 'restraint upon the *Legislature's* power to submit constitutional amendments to the voters' with the restraint 'imposed upon the *people* through the initiative process.' " (See *Californians for an Open Primary v. McPherson*

(2006) 38 Cal.4th 735, 763 [43 Cal.Rptr.3d 315, 134 P.3d 299].) They admit that the single subject rule for initiatives set forth in article II, section 8, subdivision (d) of the California Constitution does not expressly govern city-council-supported ballot measures submitted to local voters but suggest such a requirement should be implied.

■ Under the California Constitution there are only two methods for proposing an amendment to a city charter: (1) an *initiative* qualified for the ballot through signed voter petitions; or (2) a *ballot measure* sponsored by the governing body of the city. California Constitution, article XI, section 3, subdivision (b) provides: "The governing body or charter commission of a county or city may propose a charter or revision. Amendment or repeal may be proposed *by initiative or by the governing body.*" (Italics added.)

Voter initiatives to amend the city charter must conform to a wide range of stringent procedural requirements before they can be placed on the ballot, including, among other things, rules regarding the form, filing and circulation of petitions, the publication of notices, the collection of 15 percent of the votes cast at the last mayoral election, and examination and certification of such signatures by the city clerk. (See Elec. Code, §§ 9255–9269; L.A. City Charter, art. IV, §§ 450–455.) Measure R did not go through this process since it was a city-council-sponsored ballot measure subject to an alternative procedure. (See *Citizens for Responsible Government v. City of Albany* (1997) 56 Cal.App.4th 1199, 1229–1230 [66 Cal.Rptr.2d 102] [distinguishing initiatives from city-council-sponsored ballot measures].)

■ In construing a state constitutional provision, our paramount consideration is to determine the intent of those who enacted the provision. (*Leone v. Medical Board* (2000) 22 Cal.4th 660, 665 [94 Cal.Rptr.2d 61, 995 P.2d 191].) "[T]he role of the court is to apply a statute or constitutional provision according to its terms, not to read into it exceptions or qualifications that are not supported by the language of the provision . . . ." (*Rossi v. Brown* (1995) 9 Cal.4th 688, 694 [38 Cal.Rptr.2d 363, 889 P.2d 557] (*Rossi*).) "Where the language is clear, it should be followed." (*Id.* at p. 695.) Moreover, all enactments are to be construed whenever possible in a manner that preserves their validity. (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281].)

■ As we have noted, the California Constitution, article II, section 8, subdivision (d) provides that "[a]n *initiative* measure embracing more than one subject may not be submitted to the electors or have any effect." (Italics added.) The plain words of article II, section 8, subdivision (d) indicate the single subject rule applies to "*initiative* measures." Section 8, subdivision (a) defines an "initiative" as "the power of the *electors* to propose statutes and

amendments to the Constitution and to adopt or reject them." (Italics added.) The common, ordinary definition of "initiative" is "a procedure enabling a specified number of voters by petition to propose a law and secure its submission to the electorate or to the legislature for approval." (Merriam-Webster's Collegiate Dict. (10th ed. 1995) p. 602.)

The Constitution provides that the only manner by which electors may propose initiatives is by filing "a *petition* that sets forth the text of the proposed statute or amendment . . . and is certified to have been *signed by electors*" equal to a certain percentage of voters. (Cal. Const., art. II, § 8, subd. (b), italics added.) The Los Angeles City Charter correspondingly provides that an initiative may qualify for the ballot only through the filing of petitions signed by a certain percentage of voters. (L.A. City Charter, art. IV, §§ 450–451 [to place initiative on ballot, proponents must file a petition with city clerk signed by the appropriate number of voters].)[5]

Our Supreme Court has stated that "the initiative represents ' "one of the most precious rights of our democratic process" ' [citation], and . . . it is the duty of the courts ' "to jealously guard this right of the people." ' [Citation.] The single-subject rule of article II, section 8(d), was added to the California Constitution by the voters for the specific purpose of protecting the integrity of this 'most precious right[].' " (*Jones, supra*, 21 Cal.4th at p. 1168.) The people's reserved power of initiative is fundamentally distinguishable from the power of the legislative body. (*Rossi, supra*, 9 Cal.4th at p. 715.) Section 452(a) of the Los Angeles City Charter requires that initiative measures be placed on the ballot "without alteration." In this instance, the city council made several alterations to the proposal submitted by the Chamber and League before it was placed on the ballot, a further indication that Measure R was not, and was not treated as, a voter initiative. (See L.A. City Charter, § 451(f).)

█ The California Constitution contains specific provisions regulating charter amendments sponsored by the governing body of a charter county or

---

[5] Section 450(a) of article IV of the Los Angeles City Charter provides, "Any proposed ordinance which the Council itself might adopt may be submitted to the Council by a petition filed with the City Clerk, requesting that the ordinance be adopted by the Council or be submitted to a vote of the electors of the City. Any proposed ordinance amending or repealing an ordinance previously adopted by a vote of the electors may be submitted to the Council by a petition filed with the City Clerk requesting that the ordinance be submitted to a vote of the electors of the City." Section 450(b) of the charter states, "Petitions to amend the Charter shall be governed by provisions of the California Constitution and applicable provisions of state law concerning Charter amendments." Section 451 prescribes rules and procedures for submitting a proposed ordinance to the city council by initiative petitions. Of particular interest, section 451(f) expressly provides that "[n]o *amendments, changes, alterations or corrections of any kind, clerical or otherwise*, shall be permitted to be made in any petition after it has been filed with and approved by the City Clerk." (Italics added.)

city in article XI. The provisions do not contain any single subject requirement on charter amendments sponsored by such governing bodies. Specifically, as noted, article XI, section 3, authorizes the governing body of a charter city to sponsor a charter amendment, and those provisions contain no single subject requirement. (See Cal. Const., art. XI, § 3, subd. (b).) Nor does article XI, section 7.5, which sets forth certain constraints on city-council-sponsored charter amendments, include any single subject requirement. (See Cal. Const., art. XI, § 7.5.) By not encumbering governing bodies of charter cities with a single subject requirement, the framers enabled charter cities to sponsor measures aimed at accomplishing comprehensive reform at the ballot box. Charter cities are also able to group multiple technical amendments into one ballot measure. Since every ballot question carries significant administrative costs, substantial efficiencies can be achieved by a city council's authority to group technical changes of disparate but reasonably related provisions and statutory amendments into one measure to achieve a common theme or purpose.

Appellants point to nowhere in the California Constitution, or elsewhere in state law, expressly imposing a single subject restriction on ballot measures sponsored by the governing body of a charter city such as Los Angeles.

■ The Constitution must be interpreted by the language in which it is written, since " 'courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.' " (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 799 [268 Cal.Rptr. 753, 789 P.2d 934].) We conclude the single subject rule does not apply to a city-council-sponsored ballot measure such as Measure R.

Appellants misplace reliance on *Pala Band of Mission Indians v. Board of Supervisors* (1997) 54 Cal.App.4th 565 [63 Cal.Rptr.2d 148] (*Pala Band*). *Pala Band* applied a different provision, California Constitution, article II, section 12, to a county *initiative* and held the initiative violated the constitutional provision by designating a private entity to perform any function or to have any power or duty. (*Pala Band,* at p. 579.) Neither is *Shea Homes Limited Partnership v. County of Alameda* helpful in this respect to appellants, because that case also involved an initiative and, in any event, the court found the initiative violated no single subject rule. (*Shea Homes Limited Partnership v. County of Alameda* (2003) 110 Cal.App.4th 1246, 1255–1256 [2 Cal.Rptr.3d 739].)

The trial court therefore did not err in entering judgment for respondents or in denying appellants' motion to vacate the judgment.[6]

---

[6] In light of our holding, we do not reach the issue whether Measure R does or does not violate the single subject rule.

## DISPOSITION

The judgment and order denying the motion to vacate the judgment are affirmed. Respondents are to recover costs on appeal.

Cooper, P. J., and Bigelow, J., concurred.