Filed 2/26/24  The Red Brennan Group v. Shea CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE RED BRENNAN GROUP, | |
| Plaintiff and Appellant, | E080868 |
| v. | (Super.Ct.No. CIVSB2218598) |
| STEPHANIE SHEA, as Registrar, etc., | OPINION |
| Defendant and Respondent; | |
| SAN BERNARDINO COUNTY BOARD OF SUPERVISORS, | |
| Real Party in Interest and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Winston S. Keh, Judge.  Affirmed.

Michel & Associates, C.D. Michel, Joseph Di Monda, and Alexander A. Frank for Plaintiff and Appellant.

Jolena E. Grider, Deputy County Counsel, for Defendant and Respondent.

1

The Sutton Law Firm, Bradley W. Hertz; Sanders Political Law and Nicholas L. Sanders for Real Party in Interest and Respondent.

Jonathan M. Coupal, Timothy A. Bittle, and Laura E. Dougherty for Howard Jarvis Taxpayers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Petitioner below, The Red Brennan Group (the Brennan Group), a group advocating for small government and government accountability, filed a petition seeking extraordinary relief to enjoin Real Party in Interest, the San Bernardino County Board of Supervisors (the Board) from putting an initiative, Measure D, a government sponsored ballot measure to amend the county charter, on the November 8, 2022, ballot. The petition alleged that Measure D was drafted as an invalid "end run" to nullify the effect of Measure K, passed in November 2020, which was then the subject of judicial review and appeal. Measure K had provided that members of the Board may only serve one four-year term, and it limited a Board member's compensation to $5,000 per month, inclusive of all benefits. However, that measure never took effect because the Board sued to invalidate Measure K, the trial court ruled in its favor, and the judgment was appealed by both sides. In July 2022, we issued our tentative opinion in that appeal, indicating our inclination to reverse the trial court's ruling on the Measure K litigation.[1] A few days later, the Board introduced Measure D.

Measure D provided term limits of no more than three four-year terms as well as setting compensation to Board members based on 80 percent of a superior court judge's

---

[1] The final opinion was not filed until well after the election.

2

salary, as the charter provided before Measure K; it would also require a supermajority to submit any proposal to increase taxes to voters, from three-fifths vote of the supervisors, to four-fifths vote. The Brennan Group initiated proceedings for a writ of mandate to challenge the ballot materials, but due to the late filing, the merits of that petition were considered after the election, in which Measure D passed. The trial court denied the petition, and the Brennan Group appealed.

On appeal, the Brennan Group argues the trial court erroneously denied the petition because (1) Measure D violated the single subject rule; (2) Measure D's Statement of Purpose violated Elections Code section 13119; and (3) the ballot materials relating to Measure D misled voters. We affirm.

## BACKGROUND[2]

Measure K, a ballot measure which sought to amend the county charter to limit members of the Board to one term in office and to limit their total compensation to $5,000 per month was approved by a majority of the county's voters in the November 3, 2020, election. Measure J also appeared on the same ballot and proposed changes to the charter: it proposed limiting terms of supervisors to three four-year terms and would set supervisors salaries based on 80 percent of the salary of a superior court judge. This

---

**2** The Brennan Group has filed a request that we take judicial notice of (1) page 60 of the 2020 San Bernardino County Voter Information Guide depicting a sample ballot page containing Measures K and J; (2) a screen shot of a website page showing the election results respecting Measure J; and (3) a page from the 2022 San Bernardino Voter Information Guide containing Measure D. We deny the request for judicial notice because all three items are included in the record on appeal as attachments to the declaration of Alexander A. Frank in support of the amended petition.

measure was also passed by voters, but it garnered less votes than Measure K, 50.72 percent approval. Some of Measure J's terms conflicted with Measure K's two main substantive provisions, so Measure K superseded Measure J, respecting to those provisions. (Elec. Code, §§ 9102, 9123; see *Taxpayers to Limit Campaign Spending v. Fair Pol. Practices Com.* (1990) 51 Cal.3d 744, 765-768.)

The Board filed suit against the Clerk of the Board of Supervisors, captioned *San Bernardino County Bd. of Supervisors v. Monell*, San Bernardino County Superior Court case No. CIVSB2025319, seeking to invalidate Measure K. The trial court ruled in the Board's favor. Nadia Renner, the proponent of Measure K, appealed the trial court's ruling on the merits, and on July 12, 2022, the Court of Appeal issued a tentative ruling expressing its intent to reverse the trial court's ruling.

On July 26, 2022, the Board introduced Measure D to the public and, after the required public hearings and Board vote, on August 9, 2022, the Board placed Measure D on the November 8, 2022, countywide ballot. Measure D informed the voters of its intent to replace Measure K by: (1) automatically setting supervisors' salary at 80 percent of San Bernardino County judge's salary; (2) setting a limit of three terms in office for supervisors; and (3) requiring that all tax proposals be submitted to county voters upon a vote of four out of five supervisors.

On September 28, 2022, approximately five weeks before the November 8, 2022, election and eight weeks after the Board initially voted to place Measure D on the ballot, the Brennan Group filed suit to prevent Respondent Michael Jimenez, in his official

4

capacity as Registrar of Voters of San Bernardino County, from placing Measure D on the November 8, 2022, ballot, or from otherwise tallying votes or giving the measure any legal effect. The first cause of action alleged the measure violated the single subject rule, while the second cause of action alleged the measure violated Elections Code section 13119.

The Brennan Group applied ex parte to have the merits of the petition heard immediately, but that request was denied for want of good cause, and the parties agreed to a hearing date of October 7, 2022, at which time the trial court denied the Brennan Group's request for a pre-election hearing on the merits.

On October 13, 2022, the Brennan Group sought emergency relief from this court via an extraordinary writ petition. After a response was filed by the Board, on October 24, 2022, this Court denied the petition for writ of mandate and declined to issue a stay. On October 25, 2022, the Brennan Group filed its first amended pleading. This pleading amended the first cause of action to allege that the ballot measure content was not reasonably related and included a third cause of action alleging that the ballot materials violated due process, leaving unchanged the second claim. On November 8, 2022, a majority of the county's voters approved Measure D.[3] On January 17, 2023, the matter was heard on the merits; on January 27, 2023, the trial court denied the petition.

---

[3] The measure passed with 58.22 percent of the votes. (https://ballotpedia.org/San_Bernardino_County,_California,_Measure_D,_County_Charter_Amendment_(November_2022) as of December 1, 2023.)

5

On May 23, 2023, judgment was entered; notice of entry of judgment issued on June 2, 2023.

On March 10, 2023, the Brennan Group filed a notice of appeal.

**DISCUSSION**

1.    *There Is No "Reasonably Related" Requirement for Government Sponsored Ballot Measures*

The Brennan Group argues the trial court erred in concluding there was neither a single subject rule limitation nor a "reasonably related" requirement applicable to the ballot measure submitted by the Board.  We disagree.

There are two methods for proposing an amendment to a county or city charter: (1) an initiative qualified for the ballot through signed voter petitions (an initiative); or (2) a ballot measure sponsored by the governing body of the city or county (ballot measure).  (Cal. Const., art. XI, § 3, subd. (b) ["The governing body or charter commission of a county or city may propose a charter or revision.  Amendment or repeal may be proposed by initiative or by the governing body"]; *Hernandez v. County of Los Angeles* (2008) 167 Cal.App.4th 12, 21 (*Hernandez*).)  An election to determine whether to draft or revise a charter and elect a charter commission may be required by initiative or by the governing body.  (Cal. Const.*,* art. XI, §3, subd. (c).)  "If provisions of 2 or more measures approved at the same election conflict, those of the measure receiving the highest affirmative vote shall prevail."  (*Id.,* § 3, subd. (d).)

Although an *initiative* embracing more than one subject "may not be submitted to the electors" (Cal. Const., art. II, § 8, subd. (d); *Senate of the State of Cal. v. Jones* (1999) 21 Cal.4th 1142, 1154), the California Constitution contains specific provisions regulating charter amendments sponsored by the governing body of a charter county, which do not include any single subject limitation on charter amendments sponsored by governing bodies. (*Hernandez*, *supra*, 167 Cal.App.4th at pp. 22-23.) Thus, there is no single subject rule applicable to ballot measures prepared by the governing body; the single subject rule applies only to "initiative measures." (*Id*. at p. 21.)

In *Hernandez,* the court reasoned that the constitutional provisions were devised so that "[c]harter cities are also able to group multiple technical amendments into one ballot measure. Since every ballot question carries significant administrative costs, substantial efficiencies can be achieved by a city council's authority to group technical changes of disparate but reasonably related provisions and statutory amendments into one measure to achieve a common theme or purpose." (*Hernandez*, *supra*, 167 Cal.App.4th at p. 23.) Given that the constitutional provision applicable to ballot measures refers to both city and county charter provisions and amendments, this reasoning is properly extended to county governing bodies proposing amendments (revisions) to the county charter.

The Brennan Group focuses on the language "disparate but reasonably related provisions" to carve out a limitation applicable to charter counties (or cities) not expressed in either the constitution or case law. It argues *Hernandez* requires that the

7

subjects of a ballot measure be "reasonably related to achieve a common theme or purpose." But *Hernandez* does not so hold; indeed, such an interpretation would conflict with the state constitution and would elevate dicta in the opinion to a holding which lacks any ratio decidendi.

To the contrary, the applicable constitutional provisions reflect the framers' intent to relieve governing bodies of charter counties of the limitation of the single subject requirement applicable to initiatives for reasons of economy, as acknowledged in *Hernandez*: "By not encumbering governing bodies of charter cities with a single subject requirement, the framers enabled charter cities to sponsor measures aimed at accomplishing comprehensive reform at the ballot box." (*Hernandez*, *supra*, 167 Cal.App.4th at p. 23.) The framers thus enabled charter counties (like charter cities, given that article XI, § 3, subd. (b) refers to both) to sponsor measures aimed at accomplishing comprehensive reform at the ballot box without the expense of submitting multiple measures. (*Hernandez*, at p. 23.) A different rule would "encumber" the governing body with a quasi-single subject limitation, contrary to the constitutional provision.

The isolated language of *Hernandez* on which the Brennan Group relies is dicta, and not the holding of that case, and, when read in context, does not support the interpretation ascribed to it regarding a "reasonably related" limitation. A "decision is not authority for everything said in the . . . opinion but only 'for the points actually involved and actually decided.'" (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620.)

8

"[O]nly the ratio decidendi of an appellate opinion has precedential effect [citation] . . . ." (*Trope v. Katz* (1995) 11 Cal.4th 274, 287; see also *People v. Mendoza* (2000) 23 Cal.4th 896, 915.)

The holding of *Hernandez* is that the single subject rule is not applicable to ballot measures submitted to voters by a governing body. Whether there should be a "reasonably related" limitation was not actually decided; such a question would require additional interpretative analysis of article XI of the state constitution, which was not included in the decision. The Brennan Group took the "reasonably related" language out of context to support an argument otherwise lacking in authority, ignoring the principle that "[a]n opinion is authority only for a proposition actually considered and decided." (*Hernandez*, *supra*, 167 Cal.App.4th at p.19, quoting *In re Chavez* (2003) 30 Cal.4th 643, 656.)

The Brennan Group points to no other authorities to support its argument that *Hernandez* imposed a "reasonably related" limitation on ballot measures. We therefore conclude the trial court properly rejected the Brennan Group's novel, but incorrect assertion, that all the matters covered in the ballot measure must be reasonably related. If the framers had intended to limit the governing bodies' ability to accomplish "comprehensive reform" at the ballot box by imposing such a requirement, it could easily have drafted an express requirement that all parts of a ballot measure submitted by a governing body must be reasonably related. They did not, and neither shall we.

There was no error.

9

2. *Whether Measure D Violated Elections Code Section 13119 Is Moot*

The Brennan Group argues that the ballot measure's "Statement of Purpose" misled the public by failing to mention that Measure D would dramatically increase the supervisors' salaries and the number of terms of office a supervisor may serve, and that the trial court erred in concluding that Measure D's "Statement of Purpose" did not violate Elections Code section 13119. We disagree.

At the outset, the Brennan Group acknowledges the possibility its claims are moot because the election has taken place and Measure D passed, even before the hearing on the merits of its petition. It is.

We recognize this court has the discretion to consider the merits if the appeal presents a question "'capable of repetition, yet evading review'" (*Horneff v. City & County of San Francisco* (2003) 110 Cal.App.4th 814, 818-819, quoting *Ferrara v. Belanger* (1976) 18 Cal.3d 253, 259; *Hammond v. Agran* (1999) 76 Cal.App.4th 1181, 1186) or the issue is of continuing public interest. (*Patterson v. Board of Supervisors* (1988) 202 Cal.App.3d 22, 27 [after an election had taken place, the reviewing court applied the exception to mootness doctrine, to review writ ordering the deletion of portions of ballot arguments]; *Brennan v. Board of Supervisors* (1981) 125 Cal.App.3d 87, 90, fn. 2 [reviewing court applied the same exception to review, postelection, a writ requiring revision of digest prepared by Ballot Simplification Committee].)

However, the inability to have the merits of its petition heard before the November 2022 election was held was easily preventable by not waiting until five weeks before the

election to file its petition to keep the measure off the ballot. The issue of whether the ballot materials violated Elections Code section 13119 is moot.

3. *Postelection, the Ballot Materials Did Not Violate Due Process*

Brennan Group argues that the constitutional due process requires a court to invalidate an election result if voters have been "profoundly misled." We disagree.

The purpose of an election contest is "'to ascertain the will of the people at the polls, fairly, honestly and legally expressed.'" (*Friends of Sierra Madre v. City of Sierra Madre* (2001) 25 Cal.4th 165, 192 (*Sierra Madre*), quoting *Garrison v. Rourke* (1948) 32 Cal.2d 430, 436.) Because strict rules embodied in the Elections Code govern a court's review of a properly contested election, a primary principle of law as applied to election contests holds "'that it is the duty of the court to validate the election if possible. That is to say, the election must be held valid unless plainly illegal.'" (*Sierra Madre*, *supra*, at p. 192, quoting *Wilks v. Mouton* (1986) 42 Cal. 3d 400, 404, & *Gooch v. Hendrix* (1993) 5 Cal.4th 266, 277.)

Where the election contest relates to ballot materials, the general rule is that the challenge to ballot materials must be brought before an election. (*Sierra Madre*, *supra*, 25 Cal.4th at p. 192; *Denny v. Arntz* (2020) 55 Cal.App.5th 914, 921-922.) Failing that, for a postelection challenge to succeed, the alleged improper election procedure must violate notions of fundamental fairness and due process, i.e., where the violation prevented the voter from "freely and fairly making their choice at the polls." (*Horwath v. City of East Palo Alto* (1989) 212 Cal.App.3d 766, 775-776, 777-779 (*Horwath*); see also

11

*Rideout v. City of Los Angeles* (1921) 185 Cal. 426, 432 [postelection challenge proper if "a considerable number of electors or voters" were precluded "from expressing their will at the polls"]; *McKinney v. Superior Court* (2004) 124 Cal.App.4th 951, 959 [an election "might be set aside if there was malconduct that rose to constitutional levels"].)

The courts have set a "very high" bar for litigants to successfully mount a postelection due process challenge to a ballot measure. (*Owens v. County of Los Angeles* (2013) 220 Cal.App.4th 107, 123-124 (*Owens*), citing *People ex rel. Kerr v. County of Orange* (2003) 106 Cal.App.4th 914, 934 (*Kerr*).) "California law makes it hard to overturn elections. The reasons are fundamental. Voters, not judges, mainly run our democracy. It would threaten that core tenet if one person who did not like the election result could hire lawyers and with ease could invalidate an expression of popular will." (*Owens*, *supra*, at p.124.) "A litigant cannot simply intone the words 'due process.'" (*Kerr*, *supra*, at p. 934.)

California courts "'have recognized the "possibility" that an impartial analysis of a county measure or other ballot materials can be so misleading and inaccurate "that constitutional due process requires invalidation of the election."'" (*Jobs & Housing Coalition v. City of Oakland* (2021) 73 Cal.App.5th 505, 512 (*Jobs*), quoting *Owens*, *supra*, 220 Cal.App.4th at p.123.) When there is an allegation that there are omissions, inaccuracies, or misleading statements in the ballot materials, due process "'depend[s] on whether the materials, in light of other circumstances of the election, were so inaccurate or misleading as to prevent the voters from making informed choices.'" (*Alliance San*

*Diego v. City of San Diego* (2023) 94 Cal.App.5th 419, 437-438, quoting *Jobs*, *supra*, at p. 513, in turn quoting *Horwath*, *supra*, 212 Cal.App.3d at pp. 777-778.)

Thus, at the very least, a successful postelection constitutional challenge requires a showing the electorate was "profoundly misled." (*Owens*, *supra*, 220 Cal.App.4th at p. 126.) As the *Kerr* court observed, "Simply as a matter of general principle, the idea that by 'constitutionalizing' deficiencies in voter summaries you can undo an election is really quite antithetical to the democratic process." (*Kerr*, *supra*, 106 Cal.App.4th at p. 933.)

Based on these principles, due process mandates invalidation of a ballot measure only if "the materials, in light of other circumstances of the election, were so inaccurate or misleading as to prevent the voters from making informed choices." (*Sierra Madre*, *supra*, 25 Cal.4th at p.180.)

In the present case, the Statement of Purpose referred to the new proposal for a supermajority vote requirement to raise any tax.[4] Although it did not refer specifically to the provisions pertaining to supervisors (because those provisions were already in effect, and not subject to amendment by Measure D), the full text of the ballot proposal included the complete legal history of Measure K and the fact Measure D would replace it,

---

[4] In its amicus brief, the Howard Jarvis Taxpayers Association argues the materials were misleading because Propositions 13 and 218 already guaranteed voter approval of tax increases without a charter amendment. This is true in a sense, but it overlooks that the purpose of the measure involved here insured a supermajority vote on local tax measures, as explained in the ballot materials. Its arguments, attempting to draw a distinction with the case of *Jobs*, *supra*, 73 Cal.App.5th at page 517, are therefore inapposite.

expressly covered those issues.  The voters, who are presumed to have familiarized themselves with the ballot proposals could quickly see the full scope and purpose of the measure.  The voters had the relevant and correct information presented in the text of the ballot amendments and could not have been misled about the effect of Measure D.

We also note that the ballot measure, showing the proposed amendments by inserting underlined text and strikeouts, does not show any drafting changes to the supervisors' term limits or compensation.  The materials therefore reflect that these provisions (for a three-term limit and compensation based on a percentage of a superior court judge's salary) were already in effect.  It turns out that on July 24, 2020, the Board adopted an entirely new, revised charter for San Bernardino County, subject to ratification by the voters at the election on November 3, 2020.  (Charter for the County of San Bernardino, Foreward.)  The revised charter, as it existed before Measure D was approved for the ballot, included the same topics covered by Measure J, relating to term limits and compensation.  (Charter, art. II, §§ 204, 208.)[5]

Because these provisions were already in effect, Measure D's proposed changes did not reflect changes to those sections, except to renumber section 208 as 209, to allow

---

[5]     Neither party has discussed whether, after enforcement of Measure K was enjoined, Measure J automatically took effect.  We have noted that prior to the November 2020 election, the Charter had the same term limits as that proposed by Measure J, but included a different method of calculating the compensation of supervisors.  The Charter in 2022 prior to the November election, included the same method of calculating compensation as was proposed by Measure J.  It suffices for our review that prior to the November 2022 election, supervisor terms and compensation were consistent with the proposals in Measure J, such that Measure D did not propose any amendments to term limits or compensation.

14

for the insertion of the new taxing authority limitation, and to make other changes not affecting the substance of supervisor term limits or compensation. Thus, Measure D did not actually propose to amend the term limits or compensation, because they were already included in the Charter. In any event, the ballot materials laid out the full text of the Charter and proposed amendments, along with a detailed legal history of Measure K, in the interests of full disclosure.

There was no improper election procedure, and no misinformation to mislead the voters in adopting the later ballot measure. Voters adopted Measure D and it was not invalidated by the trial court nor was its enforcement stayed on appeal.

4. *Measure D Repealed Measure K While Measure K Was Pending Review*

While we were reviewing Measure K, we recognized that in the meantime Measure D had passed and was at that very time pending review in this court. (See *San Bernardino County Bd. of Supervisors v. Monell* (2023) 91 Cal.App.5th 1248, 1262-1263 (*Monell*).) The pending appeal to review Measure D did not stay or enjoin enforcement of the Charter amendments, however.

To the extent that Measure D contained terms inconsistent with Measure K, it was passed and went into effect after passage of Measure K, and prior to our decision on *Monell*, while enforcement of Measure K was still enjoined. As a rule of construction, a later legislative act that supersedes or substantially modifies an earlier law but without expressly referring to it, the earlier law is repealed or partially repealed by implication. (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016,

15

1038; *Hays v. Wood* (1979) 25 Cal.3d 772, 784; *Cannon v. American Hydrocarbon Corp*. (1970) 4 Cal.App.3d 639, 648.)

"[I]t is well settled that where a subsequent act is inconsistent or repugnant to a prior one, the last operates without any repealing clause as a repeal of the first (*Stockburger v. Jordan* [(1938)] 10 Cal.2d 636, 646); and that the latest legislative expression is controlling (*Pierce v. Riley* [(1937)] 21 Cal.App.2d 513, 519), where it is stated: '. . . it is recognized as a rule of construction in determining which act is controlling . . . that the statute last approved particularly if it be a special act applicable to a particular subject, will be controlling over one which was previously approved, on the theory that it is the latest utterance of the legislature.')" (*Assets Reconstruction Corp. v. Munson* (1947) 81 Cal.App.2d 363, 368.) Thus, as the later enactment, Measure D repealed any contrary provisions of Measure K.

In *Monell,* we declined to hold that the issue of Measure K's validity was moot because we had a justiciable controversy before us while the instant case, involving Measure D, was not final. Our review was limited to the question of whether Measure K was constitutional. Our dissenting colleague in *Monell* argued that we should not have decided that case in light of the passage of Measure D, citing *Lockaway Storage v. County of Alameda* (2013) 216 Cal.App.4th 161, because Measure D was already in effect. This is true to a certain point: an intervening change in the law—namely, where a disputed statute, order or ordinance is repealed before an appeal is concluded—the matter that is the crux of a case may become moot. (*Shaw v. Los Angeles Unified School Dist.*

16

(2023) 95 Cal.App.5th 740, 773, citing *Jordan v. County of Los Angeles* (1968) 267 Cal.App.2d 794, 799; see also *Sierra Club v. Board of Supervisors* (1981) 126 Cal.App.3d 698, 704-706.) But the Brennan Group challenged Measure D and appealed the decision.

If the Brennan Group had not challenged Measure D by legal action, it would have been deemed to have repealed Measure K previously, and the appeal from the invalidation of Measure K might have been moot. But Measure D was also challenged on appeal, and it was not ready for decision. Therefore, our resolution of the validity of Measure K in *Monell* was necessary in the event Measure D was determined to be invalid. It would have been a premature act of prejudging the merits of this appeal, to declare the earlier appeal moot.

Although we concluded Measure K was valid in *Monell*, our present resolution of the validity of Measure D means that it prevails over Measure K as the later act.[6] The superior court's rejection of the Brennan Group's challenges to Measure D has placed it on a different footing in this appeal than that of Measure K when *Monell* was presented. As we explained in *Monell,* we are not free to give precedence to a later appeal over an earlier appeal, and we are required to review to decide actual controversies by a judgment which can be carried into effect. (*Monell*, *supra*, 91 Cal.App.5th at p. 1263, citing *In re D.P.* (2023) 14 Cal.5th 266, 276.) Thus, despite our conclusion that Measure K was constitutional, it was repealed when voters approved Measure D.

---

[6] Any new proposals to amend supervisor terms or salaries will be governed by recent amendments to Government Code section 25000.

The ballot information provided to voters did not violate due process.  The trial court did not err in denying the Brennan Group's petition for writ of mandate.

## DISPOSITION

The judgment is affirmed.  Respondents Stephanie Shea, as Registrar, etc., and Real Party in Interest San Bernardino County Board of Supervisors are awarded costs.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ\
                                           P. J.

We concur:

MILLER\
                 J.\
FIELDS\
                 J.